[No. 18340.   Department One.—April 16, 1896.]

J. P. GOODNOW, RESPONDENT, *v.* O. E. PARKER, APPELLANT.

112    437
132    462
112    437
140    146
140    149

ACTION FOR CONVEYANCE AND TO QUIET TITLE—PARTITION—BOUNDARY OF GRANT—MUTUAL MISTAKE—CORRECTED DIVISION LINE—STATUTE OF LIMITATIONS—RECOVERY OF REAL PROPERTY.—Where part of the lands included in partition deeds which were intended to make an equal division of the lands owned by the parties, but which, by mutual mistake, included lands outside of the boundaries of a Mexican grant, of which the lands owned by them formed a part, and, upon discovery of the mistake, the owners employed a surveyor to make an equal division between them of the lands lying within the grant, and a fence was built between them upon part of the division line thus established, the remainder of the division line being marked by a furrow, but no correction was made in the partition deeds, an action subsequently brought to compel a conveyance to the corrected division line, and to quiet title to the land up to that line, is, in effect, an action to recover real property, and is subject to the limitation of five years prescribed by section 318 of the Code of Civil Procedure, and is not governed by the limitation of three years from the discovery of the mistake, prescribed by subdivision 4 of section 338 of that code, the mistake being merely incidental to the action for the recovery of the property.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. W. H. GRANT, Judge.

The facts are stated in the opinion.

*R. Clark,* for Appellant.

There is no allegation in the complaint when the mistake was discovered. The complaint states no cause of action. If plaintiff mistook the legal effect of his deed he can get no relief in equity. (2 Pomeroy's Equity Jurisprudence, sec. 842; *People* v. *Blankenship,* 52 Cal. 619.) Nor if the mistake be one of fact, as it is not alleged that the suit was brought within three years after the discovery of the mistake. (Code Civ. Proc., sec. 338, subd. 4.) If the action is one to quiet title, the complaint is insufficient, as there is no allegation that plaintiff has ever been in possession of the land, or that he ever bought the land. (*Smith* v. *Matthews,* 81 Cal. 120.) If it is an action to reform the deeds from Troop to Parker and from Parker to Troop and Troop to plaintiff, it states no cause of action. (*People* v. *Blankenship, supra;* Pomeroy's Equity Jurisprudence, sec. 917, notes 2, 3.) In case of "mistake" the rule in this state is that the cause of action is barred in three years after the discovery of the mistake, and the evidence of mistake must be clear and convincing. (Code Civ. Proc., sec. 338, subd. 4; *Sublette* v. *Tinney,* 9 Cal. 423; *Pierson* v. *McCahill,* 21 Cal. 128; *Vance* v. *Pena,* 36 Cal. 328; *Quivey* v. *Baker,* 37 Cal. 465; *Sheils* v. *Haley,* 61 Cal. 157; *Breen* v. *Donnelly,* 74 Cal. 305; *Ward* v. *Waterman,* 85 Cal. 508; *Latillade* v. *Orena,* 91 Cal. 577; 25 Am. St. Rep. 219; *Lestrade* v. *Barth,* 19 Cal. 660.) There is not even a *prima facie* case of mistake made out. (*Ward* v. *Waterman, supra; Leonis* v. *Lazzarovich,* 55 Cal. 52.)

*J. C. Ball,* and *Armstrong & Bruner,* for Respondent.

This is an action to recover real property. (*Watson* v. *Sutro,* 86 Cal. 527; *King* v. *Gotz,* 70 Cal. 240; *State* v.

*Moore,* 12 Cal. 70; *McKeon* v. *Bisbee,* 9 Cal. 137; 70 Am.
Dec. 642; *Hughes* v. *Devlin,* 23 Cal. 501; *Eaton* v. *Boston
etc. R. R. Co.,* 51 N. H. 504; 12 Am. Rep. 151; Lewis on
Eminent Domain, secs. 54, 55, 58, 59.)    Therefore, sec-
tion 338 of the Code of Civil Procedure does not apply,
and the limitation is five years. (Code Civ. Proc., secs.
318, 319, 325, 335; *Oakland* v. *Carpentier,* 13 Cal. 540;
*Stewart* v. *Thompson,* 32 Cal. 260; Buswell on Limita-
tions of Actions, sec. 278; *People* v. *Center,* 66 Cal. 551;
*Duff* v. *Duff,* 71 Cal. 513–29.)

HAYNES, C.—Action to compel a conveyance and to
quiet title.    The land in controversy is within "block
or lot No. 2 of William Gordon's subdivision of the
Rancho Canada de Capay, as laid down on the map re-
corded December 12, 1871, Records of Yolo county,
Book M of Deeds, page 2."

At the time this subdivision was made the grant had
not been finally surveyed by the United States, but by
such final survey a portion of the lands included in said
block 2, as subdivided and platted by Gordon, was ex-
cluded from the grant. The precise date of the segrega-
tion of the grant does not appear, but from the testimony
of Mr. Nurse it was as early as 1872.

On June 4, 1872, Gordon conveyed said block 2 to
William H. Troop by the above description, including
the reference to the recorded plat, " containing six hun-
dred and sixty-seven acres."

On October 11, 1872, Troop conveyed an undivided
one-half of said block to R. H. Newton, by the same
description, and on September 5, 1876, Newton con-
veyed his said undivided one-half to the defendant
Parker.

On December 14, 1876, Troop and Parker, in pur-
suance of a verbal agreement to partition the lands
owned by them as tenants in common by an east and
west line which should give to each an equal number of
acres, executed to each other deeds by which Par-
ker acquired the north half and Troop the south half;

but these deeds each followed the description above given, and referred to the recorded plat of Gordon's subdivision, each deed stating the number of acres to be three hundred and thirty-three and one-half, while said block contained but six hundred and seven acres after excluding the lands outside of the grant as finally surveyed and patented, the lands thus excluded being public lands of the United States in which neither party had any interest, and to which they had no title, though they were included in the conveyance from Gordon to Troop.

Troop and Parker employed Mr. Nurse, a surveyor, to run the line separating their respective portions, and this was so done as to give each an equal number of acres of the land included in that part of block 2 which was within the grant as finally confirmed and surveyed, viz., three hundred and three and one-half acres each.

On February 13, 1877, Troop conveyed the south half of said land to the plaintiff, Goodnow, but this deed followed the description contained in all the preceding deeds, and purported to convey the south half of block 2 according to the map of Gordon's subdivision, and, therefore, the public lands above mentioned were included in the description.

The court found that the description in these several conveyances, including the partition deeds, so far as they included lands outside of the grant, was the result of mutual mistake, and that, as to the partition deeds, it was the intention of both parties to divide only so much of block 2 as was within the grant as finally surveyed, the division to be so made as to give each an equal number of acres; that if the lands, as described in the deeds, and as delineated on Gordon's recorded map, were divided by an east and west line so as to leave an equal number of acres on each side of it, nearly or quite all of the public lands included in Gordon's survey would fall to the south half, so that Parker would have three hundred and thirty-three and one-half acres, and Troop would have but two hundred and seventy-

three and one-half acres, after deducting the public lands, while an equal division of the lot, after excluding the public lands, would give each three hundred and three and one-half acres. The court further found that the line made by Nurse equally divided the land within the grant. Troop and Parker built a fence upon part of the line (the remainder being marked by a furrow), and entered into possession of their respective portions according to said division. In addition to a general denial, which put in issue all the allegations of the complaint, the defendant pleaded the statute of limitations; and as another defense alleged that the partition agreement was not in writing, and was therefore invalid under subdivision 5, of section 1624, of the Code of Civil Procedure.

These issues were also found against the defendant.

The appeal from the judgment was taken too late, and is not pressed.

No specifications of insufficiency of the evidence need be specially noticed, except that made to the finding that plaintiff's action is not barred by the statutes of limitation.

That plaintiff's action is not barred by the provisions of either section 318 or 319 of the Code of Civil Procedure is clearly justified by the evidence. Troop conveyed to the plaintiff, on February 13, 1877, and he summer-fallowed up to the Nurse line, and occupied to that line for nearly two years, or at least until the harvest of 1878, and this action was commenced January 26, 1882. Those sections require seisin or possession within five years before the commencement of the action.

Section 343 of the Code of Civil Procedure provides as follows: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." This section does not apply, as the case must be governed by section 318, or by section 338, subdivision 4, of the Code of Civil Procedure, and the question as to which of them applies

must be determined by the true nature and purpose of the action. If section 318 applies the action is not barred, but if subdivision 4 of said section 338 should be given the construction and application contended for by appellant, the action is barred. Said section prescribes a limitation of three years, and said subdivision reads as follows: " 4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

There seems to be no controversy that the parties to the partition, Troop and Parker, first became aware that the partition deeds included in the description lands not owned by them or by either of them when Nurse made the survey. These deeds were executed before the line of partition was surveyed by Nurse. That line was accepted and treated by both parties, for a time at least, as the true line. The defendant admitted upon cross-examination that the intention in running that line was to divide the lands " owned " by the parties. But it is also reasonably clear that when the corrected line was made by the surveyor—the one upon which the fence and furrow were made—it was discovered that the description contained in all the deeds included land which belonged to the United States; and the mistake in the description, which was clearly mutual, was then discovered. The date of that discovery is not precisely fixed, but it was after December 14, 1876, the date of the partition deeds, and prior to February 13, 1877, when Troop conveyed to the plaintiff. If, therefore, subdivision 4 of said section governs this case, it is barred.

But I think it is not an action for relief upon the ground of fraud or mistake within the meaning of that section, but that it is an action for the recovery of real property, and that the correction of the mistake in the deeds is merely incidental to that action.

Troop was the actual owner of all the land within the

grant lying in block 2 south of the true dividing line established by Nurse, and Parker was the owner of all on the north side. By mutual mistake Parker acquired the legal title, but not the ownership, of a part of the land lying south of the line. If the plaintiff had had the legal title to the disputed portion, having been ousted from its possession, he could have recovered the possession in ejectment; but without the legal title his only remedy was in equity, not only to obtain possession, but to recover the *property*, and these were the objects and purposes of the suit, and that section of the code which relates to actions for those purposes is the one to which we must look.

Chapter 2 of the title relating to the time of commencing civil actions relates to the time of commencing actions for the recovery of real property, and section 318 of the Code of Civil Procedure found in that chapter is as follows: " No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained unless it appear that the plaintiff, his ancestor, predecessor, or grantor was seised or possessed of the property in question within five years before the commencement of the action."

This section distinguishes between actions "for the *recovery* of real property," and actions " for the recovery of the *possession* thereof." Either of these actions may be maintained at any time within five years, not necessarily from the inception of the right of ownership or of possession, but if the plaintiff, or his ancestor, predecessor, or grantor " was *seised or possessed* " within five years before the commencement of the action, an action for either of these purposes may be maintained. The limitation is not from the date when the fraud or mistake occurred, nor from the date of the discovery of the facts constituting the fraud or mistake, but from the time when the plaintiff lost the seisin or possession, though such loss of seisin or possession resulted from the advantage taken by the defendant of such fraud or mistake. If the plaintiff had been per-

mitted to peaceably occupy to the line of division for
the space of five years after the line was run, the mis-
take could not affect his right to the possession of the
disputed land; but, upon defendant's theory, he might
have acquiesced in the line of division, and permitted
the plaintiff to quietly and peaceably occupy to that line
for three years, and then oust the plaintiff, refuse to
correct the mistake, and cut off all right of the plaintiff
to recover either the property or the possession, notwith-
standing he had lost the possession but a week or a day
before he brought his action.

In *Smith* v. *Matthews*, 81 Cal. 120, the plaintiff's
grantor made a conveyance to the defendant's grantor,
and by a *mistake* in locating one of the monuments too
much land was included in the deed, but the land thus
improperly included remained in the actual possession
of plaintiff and his grantors. The court said: "The
right of the plaintiffs to have their title to the land
quieted, as against a claim asserted by the defendant
under this deed, was not barred, and could not be, while
the plaintiffs and their grantors remained in the actual
possession of the land, claiming to be the owners thereof,
and the actual owners, as against the defendant, of all
interest therein except the mere naked title."

What has been said upon this point is greatly strength-
ened by reference to chapter 3 of said title, in which
section 338 of the Code of Civil Procedure is found.
This chapter opens with section 335, which is as follows:
lows: "The periods prescribed for the commencement
of actions other than for the recovery of real property
are as follows." This section, as well as the title of the
chapter, clearly shows that the limitations therein fixed
do not apply to actions where the effect would be to cut
off any portion of the limitation of five years.

In *Oakland* v. *Carpentier*, 13 Cal. 540, 552, the court
considered section 17 (Woods' Digest, 47), which is the
same as subdivision 4 of section 338 of the Code of
Civil Procedure, except that the words "or mistake"
have been inserted after the word "fraud." That was

an action to set aside or cancel a deed upon the ground
of fraud, to which was pleaded said statute of limita-
tions.   The court said: "We think that this provision
has no relation to an equitable proceeding to set aside a
fraudulent deed of real estate when the effect of it is to
restore the possession of the premises to the defrauded
party.   In such a case the action is substantially an ac-
tion for the recovery of the real estate; indeed, it is
literally."

In *Stewart* v. *Thompson*, 32 Cal. 261, the action was to
cancel certain conveyances alleged to be clouds upon
plaintiff's title.   The court, by Sanderson, J., said: "We
consider that the limitation of three years does not ap-
ply to an action of this character.   It is true that the
clouds in question have their inception in fraud; but
fraud is not a universal characteristic of the cause of
action, and cannot, therefore, be adopted as a test of the
true nature of the action, when its position in the va-
rious categories presented by the statute of limitations
comes to be considered.   We so held in effect in *Hager*
v. *Shindler*, 29 Cal. 60. . . . . If fraud exists, it does so
merely as a feature in the case, and not as a test of the
true nature of the cause of action within the meaning
of the statute."   A similar principle was laid down in
*Clausen* v. *Meister*, 93 Cal. 555, 557.

There are cases affecting real estate, however, where
the statute under consideration has its proper applica-
tion, and where, but for this provision, the plaintiff
would be remediless.   The case of *Duff* v. *Duff*, 71 Cal.
513, is an illustration.   There, William Duff, who re-
sided in the state of Michigan, and owned real estate in
this state, gave a power of attorney to his brother Rich-
ard, who resided here, authorizing him to sell and con-
vey said real property.   Richard conveyed portions of
it to each of two other brothers, without consideration,
but concealed from his principal the fact of such con-
veyances, and William died in Michigan without knowl-
edge of the fact.   These conveyances were made at
different dates, extending from July, 1866, to April, 1872.

William's widow first learned of the facts concerning these conveyances in April, 1879, and brought her action within three years thereafter; and it was held that the complaint stated facts sufficient to constitute a cause of action, and this, notwithstanding the conveyances were made more than five years before.

In *Boyd* v. *Blankman*, 29 Cal. 20, 870 Am. Dec. 146, the statute of five years was pleaded by the defendant, and the plaintiff replied the discovery of the fraud within three years. The judgment in favor of the defendant was reversed.

In *Moore* v. *Moore*, 56 ·Cal. 89, the plaintiff was induced by fraud and imposition to execute certain conveyances without consideration, by which she conveyed away all her interest in the property of her deceased husband.

These deeds were executed in November, 1871, and the fraud was not discovered until October, 1877, and her action was commenced within three years thereafter. The form of the action does not appear from the case as reported. A demurrer to the complaint was sustained by the court below, and judgment entered for defendants. This court reversed the judgment.

*People* v. *Blankenship*, 52 Cal. 619, cited by appellant, was an action brought by the state to cancel a patent issued to the defendant for state lands upon the ground that the patent was fraudulently procured. No other relief was sought, and no other relief was pertinent or necessary under the complaint. The reported facts are meager, and the opinion of the court is brief, and no authorities are cited. The question arose upon demurrer to the complaint based upon the statute of limitations here under consideration. The effect of a cancellation of the patent would appear to be the same as the cancellation of the deed in *Oakland* v. *Carpentier*, *supra*, viz., to restore the land to the rightful owner, and that hence it was an action to recover the property to which the three years' limitation did not apply; the court, however, regarded it as an action for relief upon

the ground of fraud.   From the fact, however, that none of the earlier cases we have cited are mentioned or referred to, we infer that they were not called to the attention of the court, and that the question here under discussion was not considered, and that therefore it should not be held to have overruled the prior cases, and especially since the construction we have adopted in this case is supported by the later cases above cited.

We think the findings upon the issue of the statute of limitation pleaded by the defendant are justified by the evidence, and that plaintiff's action is not barred.

No other questions need be noticed.   We find no error which would justify a reversal of the order denying a new trial, and advise that it be affirmed, and that the appeal from the judgment be dismissed.

VANCLIEF, C., and SEARLS, C., concurred.

· For the reasons given in the foregoing opinion the appeal from the judgment is dismissed, and the order denying a new trial is affirmed.

HARRISON, J., VAN FLEET, J., McFARLAND, J.