[Civ. No. 354.   Third Appellate District.—August 26, 1907.]

# THE UNION ICE COMPANY, Respondent, v. P. M. DOYLE, J. L. LEWISON, and MARY LEWISON, Appellants, and UNION ICE COMPANY, Codefendant.

REFORMATION OF DEED—MISTAKEN DESCRIPTION—POSSESSION OF ICE PLANT—QUIETING TITLE—GENERAL DEMURRER—UNCERTAINTY.—In an action to correct a mistaken description in two deeds, intended to convey an ice plant, which was possessed by the grantee and his successors in interest continuously, other land having been described by mistake of the parties which was of no practical use, to compel a conveyance thereof by the true description, and to quiet title to the land possessed, as against the grantor and a subsequent grantee of the ice plant, where the complaint states a cause of action, and no special demurrer was interposed for uncertainty or ambiguity, even if it be conceded that the averment of mistake is not as clear, specific and direct as it might be, as to the fact of mutual mistake, objection thereto cannot be urged upon general demurrer.

ID.—ADEQUACY OF CONSIDERATION—SEGREGATION OF LAND AND ICE PLANT. Though equity may refuse relief where the consideration is inadequate, yet where the complaint shows clearly that a sufficient consideration appears for the conveyance of the ice plant of which the possession was delivered, and which was an essential part of the land purchased and intended to be sold and conveyed, the complaint is not objectionable because not segregating the exact proportion paid for the land and for the other equipments of the ice plant.

ID.—STATUTE OF LIMITATIONS—RECOVERY OF REAL PROPERTY.—The action to reform the deed for mutual mistake in the description, to compel a conveyance and to quiet plaintiff's title to the land and ice plant possessed, is in its nature one for the recovery of real property, and it is not barred except by the five years' limitation contained in section 318 of the Code of Civil Procedure. A special demurrer pleading the statute of limitations, under the provisions of subdivision 4 of section 338 of the Code of Civil Procedure regulating relief on the ground of fraud or mistake, was properly overruled.

ID.—LACHES NOT IMPUTABLE WITHOUT KNOWLEDGE.—Where the complaint shows no ground for suspicion or belief by plaintiff that there was any misdescription in the deeds until the subsequent grantee claimed title to the land possessed by plaintiff, after which the suit was brought within a reasonable time, no laches is imputable to the plaintiff, and a demurrer for laches cannot be sustained.

ID.—REFUSAL OF NONSUIT.—All that is necessary to justify the refusal of a nonsuit on the close of plaintiff's testimony is that a *prima facie* case in support of the material allegations of the complaint has been made out.

ID.—SUPPORT OF FINDINGS.—Where the evidence is conflicting, or where there is any evidence sufficient to support the findings, they cannot be disturbed upon appeal.

ID.—EQUITABLE RELIEF.—The relief granted in the case at bar is the result of the application of equitable principles established and practiced in courts of equity ''in the furtherance of justice and to prevent injustice.''

APPEAL from a judgment of the Superior Court of Placer County.   J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

L. L. Chamberlain, for Appellants.

Wilson & Wilson, and Tuttle & Tuttle, for Respondent.

HART, J.—This is a suit in equity, the object of which is to correct an alleged misdescription of the land involved in two certain deeds, to quiet title thereto, and to compel conveyances of said land in accordance with the true description thereof.

The court invoked the aid of a jury, to which certain special issues were submitted, some of which, as found by said jury, were adopted by the court. and thereafter a judgment and decree entered reforming and revising said deeds, adjudging plaintiff the owner and entitled to the possession of the land, as described under such reformation, and peremptorily enjoining the defendants from ''asserting or in any way setting up any right, title or interest in or to said last described land or any part thereof.''   From the judgment Doyle and the Lewisons take this appeal.

The facts, as gleaned from the record, are these: The defendant J. L. Lewison, prior to the execution of the deed, the reformation of which is one of the purposes of this suit, was the owner of the whole of the southeast quarter of section 26, township 17 north, range 15 east, Mount Diablo base and meridian, in the county of Placer.   Situated on the east half of the quarter section just described, at the time of the

transaction leading to this litigation, were "ice-ponds, the necessary buildings and tools of an ice plant, and a railroad siding." The west half of said section, it was shown, is made up, principally, of rocky hills "unfit for any practical use and entirely worthless for the purposes of cutting ice." The ice plant and appurtenances thereto were, it seems, the property of a Mr. McLellan and his wife. They were indebted to Lewison in the sum of $1,800, and they turned the plant and improvements over to Lewison by a bill of sale to secure his debt; but Lewison was authorized to sell the plant, take his money out of the result of such sale, and then turn the balance over to the McLellans. On the seventh day of December, 1898, in pursuance of an agreement previously reached by the parties, the Lewisons made a deed to defendant Union Ice Company, of which the plaintiff is the successor in interest, intending to convey to said defendant the *east* half of said quarter section, embracing eighty acres of marsh land, and upon which, as seen, the ice plant was situated; but by and through a mistaken understanding on the part of the parties as to the correct description of said land so sought and intended to be conveyed, the *west* half of said quarter section instead of the east half was in fact described in said deed of conveyance. At the time of the execution of the deed a bill of sale conveying to said Union Ice Company the ice plant and all the personal property belonging to said ice plant, was executed and delivered to said defendant by the Lewisons, and to which bill of sale C. R. and Frances M. McLellan, who had, as seen, some interest in the property, are also parties. It may be here stated that the ice plant which was involved in the sale was known and designated as the "Cold Stream Ice Company." The bill of sale described the land upon which said ice plant and other personal property were situated at the time of the sale as "eighty acres, comprising the *west* half of the southeast quarter of section 26, Township 17 North, Range 15 East, Mount Diablo Base and Meridian." As a consideration for the ice plant and land the Lewisons were paid by Union Ice Company the sum of $6,375. On the eighth day of March, 1902, the defendant Union Ice Company made a conveyance of all said property, real and personal, to the plaintiff, The Union Ice Company, and, assuming that the deed from the Lewisons to said Union Ice Company contained a correct description of the land upon which

the ice plant was situated, followed said description, and therefore, erroneously conveyed the *west* instead of the *east* half of said quarter section. On the third day of October, 1904, the Lewisons executed a deed to the defendant P. M. Doyle, conveying to him the *east* one-half of the quarter section—that is, the land upon which the ice plant was situated and which the plaintiff and its predecessor believed had been conveyed to them. The plaintiff, The Union Ice Company, and its grantor, have had possession of the premises since the seventeenth day of December, 1898. The mistake in the description of the land in the two deeds was not discovered by plaintiff until some time in October, 1904, when the defendant Doyle declared that he was the owner of the land.

The complaint is verified. Demurrers to the complaint, general and special, were interposed on behalf of both Doyle and the Lewisons. The grounds of the special demurrers by the Lewisons and Doyle are the same, and are that "it appears from the complaint that the alleged cause of action is barred by the provisions of section 338, subdivision 4 thereof, of the Code of Civil Procedure," and "that plaintiff and its grantor have been guilty of gross laches in delaying to bring suit, from the 7th day of December, 1898, the date of the deed from the Lewisons to Union Ice Company, to the 12th day of June, 1905, and the said complaint states no facts sufficient to excuse said gross laches." The demurrers were overruled, and thereafter the defendants filed their answers, specifically denying all the material averments of the complaint, setting forth a history of Lewison's connection with the Cold Stream Ice Plant, and setting up the bar of the statute under the provisions of section 338, subdivision 4 thereof, and of section 318 of the Code of Civil Procedure.

The special issues upon which the jury were instructed to pass were involved in the following questions, submitted in writing by the court: 1. Was there a mutual mistake in the deed from Lewison to Union Ice Company? 2. Did the defendant Doyle at or before the time of his purchase have notice of the claims of the Union Ice Company, defendant, or The Union Ice Company, plaintiff? 3. Did the plaintiff or its predecessor discover the mistake prior to June 12, 1902? The jury answered in the affirmative all the questions thus submitted to them. The court approved and adopted the findings of the jury as to questions one and two, rejected the

answer to the third, and found that all the important and material facts alleged in the complaint and essential to the establishment of plaintiff's case had been proved by the evidence.

Appellants contend most strenuously that the demurrers should have been sustained, for the reason that the complaint, by its averments, fails to disclose a case for equitable interference. It is claimed that the "mistake" upon which respondent relies for a reformation of the deeds is not shown by the allegations of the complaint to have been the "*mutual* mistake" of the parties essential to the granting of the relief demanded; that there is no allegation "that anything was paid for the land," hence a valuable consideration is not shown, and that the complaint shows "that the plaintiff and its predecessor in interest were guilty of laches."

An impartial examination of the complaint justifies the conclusion, we think, that the objections urged by counsel for appellants in their briefs against plaintiff's pleading are rather hypercritical. Most of the objections pointed out in argument against it appear to go more to the sufficiency of the statement of the facts than to the facts themselves, and in that view involve criticisms based upon the ground of uncertainty or ambiguity. The special demurrers interposed are restricted in their attack upon the complaint to the grounds of a bar under the statute of limitations and "gross laches in delaying to bring suit." No demurrer was interposed upon the ground of uncertainty or ambiguity, hence we are of the opinion that, even if it may be conceded that the complaint is not as clear and specific and direct as it should be as to the fact of "mutual mistake," it is nevertheless sufficient to overthrow the force of a general demurrer. The same may be said as to the objection that the complaint does not show by proper averments that a valuable consideration passed for the deed from the Lewisons to the defendant corporation. We think that it will not be disputed that it is a well-settled rule of pleading that where a complaint states all the facts essential to a recovery, but states them imperfectly, a demurrer, to be effectual, must be special and directed against the very defect apparent. (*Tehama County* v. *Bryan,* 68 Cal. 59, [8 Pac. 673]; citing *Himmelmann* v. *Spanagel,* 39 Cal. 401; *Ward* v. *Clay,* 82 Cal. 505, [23 Pac. 50, 227]; *Amestoy* v. *Electric R. T. Co.,* 95 Cal. 314,

[30 Pac. 550].)    The complaint, which contains twenty lengthy paragraphs, sets out quite fully the circumstances of the transfer of the property in dispute by the Lewisons to the defendant Union Ice Company, and subsequently by the latter to the plaintiff.    The facts therein show with reasonable clearness and certainty: That plaintiff's grantor intended to and did in fact buy the land upon which the ice plant and its appurtenances were situated; that the Lewisons intended to and in fact believed they did convey to the corporation that half of the quarter section; that the principal reason moving defendant Union Ice Company to buy the particular land in dispute was the fact that the ice plant was situated on said land; that said Union Ice Company immediately upon the execution of the deed to it by the Lewisons took possession of that particular piece of land; that said Union Ice Company and the Lewisons believed that said tract of land was the west half of the quarter section, and under that belief caused the land to be so described in the deed; that said Union Ice Company, under the belief that said deed contained a correct description of said land, conveyed it to the plaintiff under the same description, and that plaintiff thereupon took possession of it; that the Lewisons as well as Doyle knew that the plaintiff and its predecessor took and held possession of the land under that description; that concurrently with the execution of said deed, the Lewisons executed and delivered to Union Ice Company a bill of sale, conveying to it all of "the said property (ice plant, etc.) situated on the said *east* half of said northeast quarter of section twenty-six"; that plaintiff and its grantor were ignorant of the misdescription in the deed until after the fifteenth day of October, 1904, when "defendant, Doyle, proclaimed himself the. owner of said land" upon which were situated said improvements connected therewith; that the sum of $6,375 was, prior to the seventh day of December, 1898, agreed upon between Union Ice Company and the Lewisons as the price to be paid for the tract of land and the ice plant and improvements situated thereon; that on said seventh day of December, 1898, Union Ice Company paid to the Lewisons said sum, and thereupon received said deed and bill of sale and took possession thereof as aforesaid.    It is, moreover, alleged that at the time of the execution and delivery of the deed by the Lewisons to Doyle, said Lewisons "believed and understood that the lands

6 Cal. App.—19

described in the said deed were not the lands so as aforesaid in the possession and occupation of plaintiff," and "that neither the said J. L. Lewison nor the said Mary Lewison intended to convey or transfer by the said deed (to Doyle) the lands so as aforesaid in the possession and occupation of plaintiff, to wit: (describing the land in question), all of which facts were at all of the times herein mentioned well known to the defendant P. M. Doyle."

From the foregoing synopsis of the allegations of the complaint it is obvious that a cause of action is stated. In fact, we do not see how a much stronger statement of a cause of action could well have been set out without averring evidentiary facts, contrary to the rules of good pleading. In any event, the averments are, as we have declared, sufficient to resist the effect of a general demurrer. But counsel declare that "the complaint constantly alleges that the mistake was mutual," and that such allegation "is a mere conclusion." They say that "no facts are alleged from which the chancellor may draw the conclusion that both parties participated in the mistake beyond the allegation that both parties to the deed 'supposed and believed.' " Counsel evidently attaches no significance to the allegation to which we have adverted that the plaintiff's grantor took possession of the east half of the quarter section, with the knowledge and consent of the Lewisons, immediately upon the execution of the deed. Obviously they see no importance in the averment that the defendant Union Ice Company and the plaintiff, ever since the execution of the deed to the former, have been, under the authority of said deed, in the actual possession of the land with the full knowledge and consent of not only the said Lewisons but with the knowledge of the defendant Doyle. Manifestly there is no force, in the minds of counsel, in the declaration in the complaint that when Lewisons executed the deed to Doyle they did not intend thereby to convey to him the land upon which was situated the ice plant and in the possession of the plaintiff, and that the deed so conveying said land to Doyle was due to a mistake on the part of said Lewisons. We can perceive no difficulty in determining from the averments of the complaint that the wrong description of the land bought by plaintiff's grantor from the Lewisons was the result purely of a mistaken notion

of the description on the part of all the parties to the first deed.

As to the consideration, appellants' claim is, in effect, that the complaint does not contain a direct and specific statement that any money was in fact paid for the land, and that if inferentially it may be said that *some* money *was* paid for it, it does not appear *how much* was paid therefor; that there might have been but one dollar or less or nothing paid for the land and the balance or all paid for the ice plant and its essential concomitants, so far as the allegations of the complaint show. This is, we say, in effect the contention of counsel upon this point, and as before declared is in effect an objection to the complaint which can be taken advantage of only through the instrumentality of a special demurrer addressed directly to the question of the alleged uncertainty involved in the allegation. But we think that, under the circumstances of the transaction, as disclosed by the pleaded facts, the allegation as to consideration is sufficiently clear, direct and specific. It is not disputed that in suits for the reformation of deeds upon the ground of mistake in the description of the land sought thereby to be conveyed the question of consideration is often an important factor in the determination of the ultimate question. Where the grantor conveys only a portion of a certain tract of land and misdescription through mistake is alleged, the inadequacy of the consideration may be the fact determinative of the controversy against the party seeking relief. But, according to the averments of the complaint here, the land which plaintiff contends it was its intention and that of its predecessor to buy from the Lewisons, and the latter's intention to sell, was essentially as much a part of the ice plant as the other necessary equipments, and valuable to plaintiff and its grantor only because it was a necessary part of said ice plant. The averments of the complaint show that the Lewisons were the owners of the ice plant and the land on which it was located at the time of the sale. It is true, as we have seen, that the fact is developed by the evidence that the Lewisons were the owners of the land, but not of the ice plant equipments situated thereon; that the ice plant had been turned over to them only to secure the payment of a debt due them from the owners of said ice plant. But the ability of the complaint to successfully meet the challenge of the general and special de-

murrers must be measured by its averments. These, the demurrers must admit, speak the truth, and, therefore, so far as the complaint is concerned there can be no question that it appears clearly that a sufficient consideration passed for the ice plant, of which, under the allegations of the complaint, the land was an essential part. This being so, there was no overruling, if any, necessity for segregating in the complaint the lump sum paid for the entire property, thus showing the exact proportion thereof paid for the land and the proportion paid for the other equipments of the ice plant.

The order overruling the special demurrers was proper. One of the grounds of said demurrers is that the action was barred by the provisions of section 338, subdivision 4 thereof, of the Code of Civil Procedure. Said subdivision of that section prescribes a limitation of three years within which an action for relief on the ground of fraud or mistake may be brought, and provides that "the cause of action in such case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." But it seems to have been held by our supreme court in some comparatively recent cases, and that it is now the settled law in this state, that an action of the nature of the one at bar, where the relief sought is the revision of a deed because of misdescription of the land through a mutual mistake of the parties and to compel a conveyance of the land according to the corrected description and to quiet title thereto, is one "for the recovery of real property, and that the correction of the mistake in the deeds is merely incidental to that action" and "is not barred except by the five year limitation contained in section 318" of the Code of Civil Procedure. (*Goodnow* v. *Parker,* 112 Cal. 442, [44 Pac. 738] ; *Murphy* v. *Crowley,* 140 Cal. 141, [73 Pac. 820].) Nor do the allegations of the complaint betray laches on the part of plaintiff or its predecessor in interest in the assertion of its right. The complaint, as we have seen, shows very clearly that the grantor of plaintiff intended to purchase and did in fact purchase the east half of the quarter section; that both it and its grantors believed, at the time of the execution of the deed, that the land sought to be conveyed comprised the *west* half of said quarter section; that the defendant Union Ice Company took possession of the *east* half under the deed thus executed, and that it and its grantee have at all times

since remained in possession of said land continuously and uninterruptedly and that the plaintiff did not make discovery of the misdescription until about eight months prior to the institution of this suit. There is absolutely nothing in the averments of plaintiff's pleading which can justify the contention that it appears from the *face* of the complaint that the plaintiff and its predecessor were guilty of laches. While there are certain general rules by which a court of equity is guided in determining whether the complaining party has been guilty of such negligence in the assertion of his claim or right as to justify the court in refusing to award him relief, yet each instance of negligence must depend to a great extent upon its own circumstances. "It is not," says Mr. Pomeroy in his work on Equity Jurisprudence, section 856, "every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. . . . Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the *other party has not been prejudiced thereby.*" It should clearly appear, in order to impute laches to one seeking the relief, that he had knowledge, or failed to obtain knowledge where it was obtainable after notice; or that there should be circumstances which should have induced an inquiry and an effort to obtain knowledge. (18 Am. & Eng. Ency. of Law, 2d ed., p. 102.) The complaint in the case at bar shows that neither the Lewisons nor Doyle could have been prejudiced, even if it could be said that the plaintiff and its grantor were negligent in appealing to equity to straighten out the erroneous description. For, as before observed, the defendants had full knowledge of the possession and the claim of ownership of the east half of the quarter section by the plaintiff and its predecessor under the deed to the latter from the Lewisons. But the complaint does not show negligence or laches; on the contrary, it clearly sets out the fact that the plaintiff and its predecessor had no knowledge, nor did circumstances arise to put them upon inquiry with reference thereto, of the defective description of the land until some four years after they took possession under the deed, when Doyle claimed that he was the owner of said land. The necessary effect of the argument of counsel on this point would seem to be that the plaintiff and its predecessor should have

suspected, without any special reason therefor, from the moment of the execution of the deed, that something must be wrong in the description of the land intended to be conveyed, and that their failure to do so constituted a want of the exercise of that degree of diligence with which in such a case an aggrieved party is charged. The complaint nowhere shows that the plaintiff or its grantor had any conceivable reason for doubting the correctness of the description until Doyle announced, in the month of October, 1904, that he was the owner of the land, and then, having for the first time obtained knowledge of the erroneous description, it proceeded within a reasonable time to seek the relief to which the complaint clearly demonstrates it to be entitled.

Upon the conclusion of the introduction of testimony on behalf of the plaintiff, the defendants presented a motion for a nonsuit upon the specific grounds: 1. That the evidence failed to show that notice, actual or constructive, was ever brought to the defendant Doyle that Lewison had sold to the defendant Union Ice Company the land in dispute; 2. That the evidence adduced through plaintiff's witnesses shows that the discovery of the alleged mistake in the description of the land in the deed of conveyance from the Lewisons to Union Ice Company was in December, 1898, "shortly after the purchase of the land, and that therefore more than the statutory time has elapsed within which suit can be brought to correct such a mistake." The court denied the motion, and the ruling was, under the evidence, unquestionably proper. All that is necessary to justify the refusal of a nonsuit asked for on the close of plaintiff's testimony is that a *prima facie* case in support of the material allegations of the complaint has been made out. (*Janin* v. *London etc. Bank*, 92 Cal. 14, [27 Am. St. Rep. 82, 27 Pac. 1100]; *Felton* v. *Millard*, 81 Cal. 540, [21 Pac. 533]; *Pacific Mut. L. I. Co.* v. *Fisher*, 109 Cal. 567, [42 Pac. 154]; *Archibald Estate* v. *Matteson*, 5 Cal. App. 441, [90 Pac. 723].) More than a *prima facie* showing upon the points forming the basis of the motion was made by plaintiff here in its original case.

But the principal point urged by appellants, aside from those arising under the order overruling the demurrers, is that the evidence does not sustain the findings of the court. Counsel for appellants in their briefs expressly recognize the rule, established by the constitution, that this court is re-

stricted, in its appellate jurisdiction, to the determination of questions of law alone, and is, therefore, without power or right to disturb a judgment because of the insufficiency of the evidence to sustain the findings of fact upon which it rests, where there is a substantial conflict in such evidence; yet they undertake to demonstrate in their briefs here, through a process of metaphysical reasoning and subtle refinement, in their treatment and analysis of the evidence, that there is such a clear failure of proof upon certain points essential to the maintenance of the claims of the complaint as to justify this court in declaring that, as a matter of law, the evidence is insufficient to sustain the court's findings. We are not at liberty, after a careful examination of the record, to adopt the views thus entertained by the learned counsel.

The claim that there is no evidence to show that the Lewisons received any consideration for the land is not supported by the record. Mr. Toby, one of the vice-presidents of plaintiff's predecessor at the time of the transaction, testified that when the agreement was reached for the sale of the Cold Stream Ice Company property there was some conversation between him and defendant J. L. Lewison that the latter was to receive ten dollars per acre for the eighty acres of land, which included the portion upon which were situated the ice plant and other improvements. Lewison, it is true, denied this, but the court's finding upon the point is sufficiently supported by Toby's testimony. Besides, we think there are certain circumstances, independent of Toby's testimony, which strongly tend to show that the Lewisons received a sufficient consideration for the land. The land, it will be kept in view, is, according to the testimony of surveyor Uren, who surveyed it, of only nominal, if any, value for any other purpose than for cutting or harvesting ice thereon. The ground consists of low flat land, partly marshy. Lewison himself virtually admitted it to be of little value, in detailing a conversation he had prior to the sale with Mr. Hopkins, president of the corporation defendant, and even if we disregard the positive testimony of Toby, and it be true, as has been suggested, and as may well be inferred from the evidence, that his anxiety to secure the payment of the $1,800 due him from the McLellans solely influenced said Lewison in transferring the land to the corporation, without any other specific monetary consideration therefor, we think that fact of itself,

under the peculiar facts of this case, and considering the insignificance of the intrinsic value of the land, would stand as a sufficient consideration. For it appears sufficiently clear from the whole record that the payment of the large sum of money due him from the McLellans was largely contingent upon the sale of the ice plant. But there is other significant testimony presented by the record in connection with this question of consideration which should not be overlooked. Lewison testified that he received from the defendant corporation the sum of $6,375, and declared that, after paying himself out of said sum the amount due him from the McLellans, he turned the balance over to the latter. But McLellan testified that all that he received from Lewison out of said $6,375 was the sum of $1,350. There was, he said, $125 paid for "ground rent," but that he knew nothing of what became of the balance of the sum paid for the property by the corporation, except the sum that Lewison kept for the liquidation of the debt due him. When asked if Lewison had ever rendered to him a statement as to the balance, McLellan replied: "That ended the matter as far as I had anything to do with it (speaking of the receipt from Lewison of the sum of $1,350). When I got the $1,350, I don't remember whether Lewison represented anything or not." Lewison testified that, after he took out what was due him and paid the McLellans $1,350, he either paid the balance to said McLellans or paid it to their creditors on their order. Upon this point McLellan declared that there were "some other debts due by the Cold Stream Ice Company, did not amount to much, and I paid them since, maybe four or five hundred dollars. They were not paid by Lewison. There were no other large debts than the $1,800.00." It is thus to be seen that, after Lewison's debt was paid, and the sum of $1,350 turned over to the McLellans and the further sum of $125 paid for ground rent, there remained a balance of $3,000, approximately. McLellan declared that he did not receive said balance, nor did he know what became of it. Lewison's explanation of the disposition of the balance is, so far as the record enables us to judge, indefinite and unsatisfactory. The record, it is quite apparent, discloses an abundance of evidence to justify the finding that a sufficient consideration passed for the land.

But there is no room for even the remotest doubt that the land in dispute is the particular tract of land which the

Lewisons intended and attempted to convey to the corporation. Lewison himself admitted and explicitly declared that he intended to convey to the corporation the land upon which the ice plant and its necessary adjuncts were located. He said that at the time of the execution of the deed and the bill of sale, he did not know the description of the land. He stated further that when he sold to Doyle the balance of the land owned by him in the locality of the land in question he did not intend to convey, nor did he at any time after the execution of the deed believe that he had conveyed, to him the eighty acres upon which the ice plant was situated. That this is absolutely true is further evidenced by the fact that Lewison, in his deed to the corporation, expressly reserved to himself the right to use the "Stanford siding," or railroad track, which the evidence shows to be located on the east half of the quarter section.

The rule, attempted to be invoked here, that where there appear in a case of this nature equal equities between the parties, a court of equity will remain silent and passive, and refuse to award relief, finds no room for play under the facts as displayed by the record before us. Doyle testified that he knew, before the date of the delivery and execution of the deed by Lewison to him, that a fractional portion of the large body of land purchased by him had been transferred by Lewison to the corporation. Doyle had lived in the neighborhood for many years, during most of which time he was employed as a bookkeeper by Lewison. He was in a position in which he could have learned, and the evidence shows that he did learn and know of the transaction between Lewison and the corporation. "A court of equity," says the court in *Enos v. Stewart*, 138 Cal. 112, [70 Pac. 1005], "interferes to correct a mistake in a written instrument only in furtherance of justice, and to prevent fraud or some injustice." The relief granted in the case at bar, under the evidence disclosed by the record, is the result only of the application of the principle as it is stated in that case and of other equitable principles established and practiced in courts of equity "in the furtherance of justice and to prevent injustice."

The findings of the court upon all the other essential issues involved in the case are fully sustained by the evidence. There are certain rulings of the court in admitting and rejecting testimony of which complaint is made, and presented

here. We have examined all those assignments carefully and are satisfied the rulings were correct.

We find no error in the record invading the rights of appellants. The judgment is, therefore, affirmed.

Burnett, J., and Chipman, P. J., concurred.