[Civ. No. 32633.   Second Dist., Div. Four.   Apr. 21, 1969.]

BURDETTE S. WELSHER et al., Plaintiffs and Appellants, v. FLORENCE GLICKMAN et al., Defendants and Appellants.

Garland J. Weber for Plaintiffs and Appellants.

Rawlinson, Lang & Lister and John Douglas Lang for Defendants and Appellants.

DUNN, J.—Under date of September 14, 1953, defendants Leon and Hada Harriton, husband and wife, and defendant Florence (Harriton) Glickman deeded to plaintiffs Burdette and Iona Welsher, husband and wife, certain real property located in the City of Los Angeles.[1] The deed to plaintiffs recited the reservation of an easement of way across the property, also excepting oil, gas and mineral rights from the grant, ". . . together with the right to enter upon said land for removing same." Defendant Leon Harriton retained property adjoining the property deeded. In February 1955, Harriton deeded to his daughter, Florence, and her husband, Emanuel Glickman, all his interest in such adjacent property.

The description of the common boundary between the properties was erroneously set forth in the deed to plaintiffs and on July 26, 1966 they initiated the present action by filing a complaint to: (1) quiet title as against whatever interest in their property the defendants might claim, and (2) to reform the deed. By their answer (and again by stipulation at trial) defendants admitted the boundary line had erroneously been described in the deed and that it should have been as plaintiffs contended. However, defendants made certain affirmative pleas. Thus, defendant Leon Harriton claimed to be owner in fee simple of the oil, gas and mineral rights under plaintiffs' property, with the right to surface entry thereon. Defendants Glickman claimed ownership of the easement, appurtenant to their own adjacent property, for ingress and egress over a portion of plaintiffs' property. At the trial it was stipulated that only these two matters were in issue. During trial, the court permitted defendants to file a supplement to their answer, alleging that plaintiffs' causes of action were, ". . . barred by the provisions of Sections [sic] 388, Subdivision (4) of the California Code of Civil Procedure."[2]

So far as here pertinent, the court found: (1) defendants had reserved the oil, gas and mineral rights under plaintiffs'

---

[1]Bernice (Harriton) Hockaday, also was a grantor and a named defendant herein, but plaintiffs dismissed her from the action. Defendant Emanuel Glickman was not a grantor.

[2]Note: (a) The supplement filed by defendants is erroneously entitled "First Supplement to Complaint"; (b) the minute order of the court compounds this error by stating, "Upon *motion of plaintiff*, the Court orders 1st supplement to complaint filed" (italics added); and finally, (c) Code of Civil Procedure section 388 is not concerned with the limitation of actions and it has no "Subdivision (4)." However, as all parties

property but not the right to surface entry thereon for removal of the same; (2) that the appurtenant easement for ingress and egress expired as the result of the completion, in 1962, of La Rue Street (one of two abutting streets bounding the property); but (3) that defendants Glickman had reacquired the same easement by prescription, though it was limited in length by the extent of the adverse user to 150 feet. The court concluded that: (1) the grant deed to plaintiffs should be reformed by striking from the exception of oil, gas and mineral rights the phrase, ''. . . together with the right to enter upon said land for removing the same''; (2) should be reformed by striking the reservation of the easement for ingress and egress; and (3) defendants Glickman should be awarded the 150-foot easement for ingress and egress. Judgment in accordance with the findings and conclusions was entered and all parties appeal.

## I. *Plaintiffs' Appeal*

■ Plaintiffs appeal from the judgment on the sole ground that the trial court erred in finding defendants Glickman, though losing their granted easement of ingress and egress by virtue of the occurrence of a condition subsequent (the paving of La Rue Street), nevertheless acquired a prescriptive right to the identical, though a shorter, easement of way. Plaintiffs point out that the trial court found defendants' adverse possession began in 1962, coinciding with the time their granted easement expired. As the complaint was filed on July 26, 1966, five years had not passed since 1962, as required by Code of Civil Procedure sections 321, 325.

Defendants Glickman respond with an argument that: (1) there was no evidence to support the finding of the trial court that La Rue Street was completed in 1962, the evidence showing La Rue Street was completed in 1961, and (2) that such finding is contrary to the evidence, in that official records of the City of Los Angeles show the street was completed on August 24, 1960.

The defendants' contentions have no merit. First, there was ample testimony to establish the La Rue Street completion in 1962. Second, there is no record that the city records, even if conclusive on the point, were offered into evidence. After the trial, proposed findings were drafted by plaintiffs and a hear-

---

seem to treat the matter as a proper pleading of Code of Civil Procedure section 338, subd. 4 (establishing a 3-year limitation on actions to reform for mistake), we also will so treat it.

ing was held by the court to settle the defendants' disapproval of some of these findings. By letter to the court following the hearing, defendants for the first time brought to the court's attention the purported existence of records of the city Bureau of Engineering which allegedly established the completion of La Rue Street in August 1960. This was no evidence at all and could not have been considered by the trial court.

There are a number of rules regarding the ripening of an easement by prescription from adverse user. Thus: Civil Code, sections 1000, 1007 and Code of Civil Procedure sections 321, 325 fix ground rules for establishing title by adverse possession, further requiring the payment of taxes in order to acquire title; acquisition of an easement by prescription is subject to the same rules (*Jones* v. *Harmon* (1959) 175 Cal. App.2d 869, 875 [1 Cal.Rptr. 192]; *Jones* v. *Young* (1957) 147 Cal.App.2d 496 [305 P.2d 286]; 17 Cal.Jur.2d 152 Easements, § 20); and the extent of a servitude by prescription may be determined by the nature of the adverse user (Civ. Code, § 806; *Gaut* v. *Farmer* (1963) 215 Cal.App.2d 278, 282 [30 Cal.Rptr. 94]); however, one seeking to establish the right to an *easement* by prescription need not prove payment of taxes for since an easement ordinarily is not assessed for property tax purposes, the burden of proving that it was, and that taxes were levied, is on the party contesting the prescriptive easement (*Glatts* v. *Henson* (1948) 31 Cal.2d 368, 371-372 [188 P.2d 745]; *Biggs Ditch Co.* v. *Jongste* (1944) 24 Cal.2d 298, 303 [149 P.2d 1]; *Bernstein* v. *Dodik* (1933) 129 Cal.App. 454, 458-459 [18 P.2d 983]); a transfer of real property (as by Harriton to Glickman) passes all easements attached thereto (Civ. Code, § 1104; 17 Cal.Jur.2d 175, Easements, § 33).

Also, in order to ripen into title, adverse possession must be "exclusive," in a legal sense (2 Cal.Jur.2d 558, Adverse Possession, § 54). In the present action there was no evidence offered to show an element of "exclusiveness." Nevertheless, and assuming there was, still the finding that adverse possession did not begin until 1962 defeats the conclusion that a prescriptive easement of way was created. Thus, there were less than five years of adverse user by defendants at the time plaintiffs' suit was filed. It is true that more than five years had passed when the case came to trial in June 1967, but this is irrelevant for "[1] It is true that ordinarily the filing of an action, either by the person asserting a prescriptive right, or by a person against whom the statute of limitatons is running, will

interrupt the running of the prescriptive period, and the statute will be tolled while the action is actively pending.'' (*Yorba* v. *Anaheim Union Water Co.* (1953) 41 Cal.2d 265, 270 [259 P.2d 2]. And see: 2 Witkin, Summary of Cal. Law (1960) 1028, Real Property, § 190.

By virtue of the foregoing that aspect of the judgment favoring defendants must be reversed.

II. *Defendants' Appeal*

Defendants, as appellants, assert several grounds for reversing the judgment against them.

(A) *Was Plaintiffs' Right To Reform The Deed Barred By The Statute Of Limitations?*

█ It will have been noted that the judgment ordered reformation of the deed to plaintiffs in two particulars. Defendants contend that any right plaintiffs may have had to reformation was lost by their failure to file suit within three years as limited by Code of Civil Procedure, section 338 subdivision 4. The plaintiffs answer this by contending the three-year statute does not apply, as this is an action to quiet title, not to reform a writing, and that the five-year limitation prescribed by Code Civ. Proc., § 321 is appropriate.

One well might conclude plaintiffs' position has merit. Thus, Civil Code, section 3399 refers to reformation of ''written contracts,'' and a contract need have no relationship at all to real estate. Even if it does, the part to be reformed need not pertain to title but only to other aspects of real estate transactions such as sale price, accrued taxes, and the like. Quieting title is thus no necessary part of reformation. On the other hand, where one does seek to quiet title he has a different objective and seeks a different form of relief. Painting the statutory objective with a broad brush, it has been said: ''The intention is to embrace every description of claim whereby the plaintiff might be deprived of the property, its title clouded, or its value depreciated, or where the plaintiff may be damnified by the assertion of an outstanding title already held or to grow out of the adverse pretention.'' 41 Cal.Jur.2d 471, Quieting Title, § 5. (And see: *idem*, p. 483, § 16; *Head* v. *Fordyce* (1860) 17 Cal. 149, 151; *Castro* v. *Barry* (1889) 79 Cal. 443, 446-447 [21 P. 946].) Distinguishing an action seeking to uncloud a title by cancelling an instrument from one to quiet title, *Castro* states [p. 446]: ''In the former case the proceeding is aimed at a particular instrument, or piece of evidence, which is dangerous to the plaintiff's rights, and

which may be ordered to be destroyed in whosesoever hands it may happen to be. While in the latter, the proceeding is for the purpose of stopping the mouth of a person who has asserted or is asserting a claim to the plaintiff's property, whether such claim be founded upon evidence or utterly baseless. It is not aimed at a particlar [*sic*] piece of evidence, but at the pretensions of an individual." If the statutory policy as so interpreted be carried to logical conclusion, then in an action to quiet title no statutes of limitation would apply except such, alone, as limit that type of action.

In the early case of *Murphy* v. *Crowley* (1903) 140 Cal. 141 [73 P. 820] the problem is discussed. The action was a mixed one to cancel a deed and to quiet title. The court noted that Code of Civil Procedure section 338, subdivision 4 attached a three-year limitation on actions for relief (such as cancellation) when founded upon fraud or mistake, whereas Code of Civil Procedure section 318 required possession or seizin of property within the longer period of five years before commencing an action to recover the right to real property or its possession. Holding that the nature of a cause of action is to be determined from the object and purpose of a suit, the court held the five-year statute governed. *Thompson* v. *Moore* (1937) 8 Cal.2d 367 [65 P.2d 800, 109 A.L.R. 1027] and *Union Ice Co.* v. *Doyle* (1907) 6 Cal.App. 284, 292 [92 P. 112] reached a similar result.

However, *Thompson* specifically, and *Union Ice* and *Murphy* by implication, are all overruled in *Leeper* v. *Beltrami* (1959) 53 Cal.2d 195 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803]. There, plaintiffs pleaded a single cause of action whereby they sought to have a deed cancelled and also to quiet title. The court stated (p. 216) : "The court in the *Thompson* case was undoubtedly correct in holding that facts alleged in a complaint authorizing relief both to quiet title and to cancel an instrument state but one cause of action. That is undoubtedly the law. [Citations omitted.] But this does not mean that the cause of action is necessarily one to quiet title. Quieting title is the relief granted once a court determines that title belongs in plaintiff. In determining that question, where a contract exists between the parties, the court must first find something wrong with that contract. In other words, in such a case, the plaintiff must show he has a substantive right to relief before he can be granted any relief at all. Plaintiff must show a right to rescind before he can be granted the right to quiet his title. The *Thompson* case permits a plaintiff who has executed a contract

to secure relief by simply couching his cause of action in terms of quiet title, and thus permits him to avoid and evade the normal requirements of a cause of action to avoid that contract. This is pure formalism and should not be countenanced. The case is disapproved.''

In the present action, the deed to plaintiffs must be reformed before title can be quieted. Thus: (1) the reservation of the right of surface entry to develop oil, gas and mineral rights, and (2) the easement of way, must first both be stricken from the deed before plaintiffs are put in position to quiet defendants' claim of adverse prescriptive or other rights to such easements. The *Leeper* case, it is true, involved cancellation (Civ. Code, § 3412) rather than reformation (Civ. Code, § 3399) but where the right to cancel rests on the ground of fraud or mistake, then the three-year statute of limitations (Code Civ. Proc., § 338, subd. 4) relating to such grounds is applicable. *Los Angeles City School Dist.* v. *Landier Inv. Co.* (1960) 177 Cal.App.2d 744, 751 [2 Cal.Rptr. 662]; *Zakaessian* v. *Zakaessian* (1945) 70 Cal.App.2d 721, 725 [161 P.2d 677]; *Redpath* v. *Aagaard* (1932) 217 Cal. 63, 66 [16 P.2d 998]. The rule as to reformation is the same. And Civil Code section 3399 providing for reformation, though by its terms applying only to ''written contracts,'' has been held also to apply to deeds (*Hanlon* v. *Western Loan & Bldg. Co.* (1941) 46 Cal.App.2d 580, 597-599 [116 P.2d 465]; *Western Title Guar. Co.* v. *Sacramento & San Joaquin Drainage Dist.* (1965) 235 Cal.App.2d 815, 823 [45 Cal.Rptr. 578]).

It thus becomes apparent, and must be held, that the three-year limitation of actions in Code of Civil Procedure section 338, subdivision 4 applies.

(B) *Did Plaintiffs' Cause Of Action To Reform Accrue Before The Running Of The Three-Year Period?*

Code of Civil Procedure section 338, subdivision 4 specifies a three-year limitation on ''An action for relief on the ground of fraud or mistake.'' However, the right to reform does not necessarily accrue at the time the fraud or mistake is committed, inasmuch as the section further provides ''The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'' The plaintiffs (in capacity of respondents to defendants' cross-appeal) contend there was no evidence to show they discovered the true facts constituting the fraud or mistake at the time such occurred. Be that as it may, the record is clear that plaintiffs were fully aware of

the reservation of the easement of way and of the exception of oil and gas rights, with the privilege of surface entry, by no later than mid-1962. It is apparent more than three years had passed at the time they filed their complaint, in July 1966, and that they are barred from reforming the deed.

Because of the foregoing conclusions it is unnecessary to consider additional points raised by defendants on their appeal.

In view of the admissions in defendants' answer and the stipulation between the parties, the judgment of the trial court is affirmed so far as it corrects the boundary line between the two properties involved; but it is reversed: (1) insofar as it reforms the deed by striking from the exception of oil, gas and mineral rights the connected privilege of surface entry, (2) insofar as it deletes from the deed the reservation of an easement for ingress and egress, and (3) insofar as it grants defendants a 150-foot easement of way by prescription. The matter is remanded to the superior court with instructions to file new Findings of Fact and Conclusions of Law and a new Judgment not inconsistent herewith.

Jefferson, Acting P. J., and Kingsley, J., concurred.