[Sac. No. 1917.  Department One.—June 14, 1912.]

HANFORD GAS AND POWER COMPANY (a Corporation), Respondent, v. CITY OF HANFORD, Appellant.

VOLUNTARY PAYMENT OF ILLEGAL DEMAND—ACTION TO RECOVER—PAYMENT UNDER PROTEST.—Unless otherwise provided by statute, as is the case in this state with relation to state and county taxes (Pol. Code, secs. 3804, 3819), one who pays an illegal demand with full knowledge of its illegality, cannot recover it, unless the payment is necessary in order to protect his person or property. This is so, notwithstanding the payment is made under protest.

ID.—INSUFFICIENT ALLEGATION OF MENACE, COMPULSION, AND COERCION. —A general allegation in the complaint to recover money so paid that the payment was made "under menace, compulsion and coercion" is not sufficient to show any of such characteristics. The probative facts showing the menace, compulsion, or coercion must be alleged.

ID.—PAYMENTS MADE BY GAS COMPANY TO MUNICIPALITY FOR USE OF STREETS — THREAT OF ACTION TO FORFEIT PRIVILEGE.—Payments made by a gas company to a municipality of a certain percentage of its gross receipts, the legality of which the company denied but which the municipality claimed under a stipulation contained in the ordinance granting the company the privilege of using the city streets on the condition that such payments were annually made, are not rendered compulsory or other than voluntary, by the mere threat of the municipality, that if the payments were not made, it would institute a legal proceeding against the company for the forfeiture of the privilege granted by the ordinance.

ID.—INSUFFICIENT COMPLAINT FOR INJUNCTION.—It is held that the complaint, in so far as it seeks an injunction against the future exaction of such payments by the municipality, is entirely wanting in specific statement warranting the inference that an injunction is necessary to protect the plaintiff in any of its rights.

APPEAL from a judgment of the Superior Court of Kings County.   John G. Covert, Judge.

The facts are stated in the opinion of the court.

H. Scott Jacobs, for Appellant.

M. L. Short, for Respondent.

ANGELLOTTI, J.—This is an action to recover from the city of Hanford, $740.20, paid by plaintiff to said city under such circumstances as, it is claimed, entitles plaintiff to recover it with interest, and also to obtain a decree enjoining the city from doing certain things.   A demurrer to the complaint for want of facts to state a cause of action was overruled, and defendant failing to answer, judgment was given for the recovery of such money with interest, and restraining the city from the commission of any of the acts alleged to be threatened.   Defendant appeals from such judgment.

The complaint is substantially as follows: Defendant is a municipal corporation of the sixth class.   The plaintiff is a corporation organized for the purpose of constructing and maintaining gas plants in cities and towns and manufacturing and supplying gas to the inhabitants of said cities and towns to be used for heat, light, and power.   On July 14, 1902, E. E. Bush and C. S. Young applied in writing to the board of trustees of defendant for a franchise and privilege for themselves, their successors, and assigns for a period of fifty years, to lay and maintain gas pipes for the purpose of conducting gas for heat, power, and light, over, upon, along, and under the public streets, alleys, etc., in the city of Hanford, and for selling and supplying the same to the inhabitants of said city.   Notice of such application was given to the board of trustees by publication stating that it was intended to grant said privilege, and that sealed bids would be received therefor up to October 23, 1902, at eight o'clock P. M.   The notice stated that the principal bidder and his assigns must, during the life of said franchise, pay to the city two per cent of the gross annual receipts arising from the use, operation, or possession of the franchise, except for the first five years.   It stated that "in the event said payment is not made, said franchise shall be forfeited."   It further required a bond

from the grantee in the sum of two thousand five hundred dollars, conditioned for the observance by him of the stipulations on his part. On October 23, 1902, C. S. Young submitted a bid for such privilege in accordance with the conditions specified in the notice, offering to pay therefor two hundred and fifty dollars. This bid was accepted. On October 28, 1902, Young gave the required bond, which was approved and accepted. On November 10, 1902, the board of trustees adopted an ordinance granting to Young and his assigns the privilege and franchise for the term of fifty years "to lay gas pipes for the purpose of carrying gas for heat, light and power through the public highways, streets, and alleys in said city of Hanford" on the conditions specified in the notice for bids, one of which conditions was specified in the ordinance as follows:—

"First. The said C. S. Young, and his assigns, must, during the life of said franchise, pay to the said municipality two (2) per cent of the gross annual receipts arising from its use, operation or possession; provided, that no percentage shall be paid for the first five (5) years succeeding the date of the franchise, but thereafter such percentage shall be payable annually, and in the event said payment is not made, said franchise shall be forfeited."

Thereafter Young assigned to plaintiff all his interest in and to said privilege, and plaintiff thereupon constructed a gas plant in said city, and laid gas pipes through the streets, highways, and alleys thereof, and ever since the completion of said work has operated said plant and has been engaged in the business of manufacturing gas and supplying the same to the inhabitants of the city. On March 25, 1909, plaintiff paid to the city $359.09, said sum being two per cent of its gross earnings for the first year after the expiration of the first five years. On April 14, 1910, it paid to the city $385.11, the same being two per cent of its gross earnings for the second year after the expiration of the first five years. Each of these payments was accompanied by a written notice to the effect that the same was paid "under protest," and under the claim that the ordinance in so far as it required the payment of said money was unconstitutional and void, and that the city has no power to exact such payment, and that the company does not waive any of its rights to object thereto.

It was alleged that "plaintiff was unlawfully required to pay" these sums, that the city "did, . . . unlawfully and without right, demand of said plaintiff" such payments, that "by reason of said demand" plaintiff made the payments; that "the collection and taking of said money . . . was unauthorized, unlawful and without right, and without consideration of any kind whatever, and the payment thereof was made by plaintiff herein under menace, compulsion and coercion and under a threat that if the same were not paid, proceedings would be instituted for the forfeiture of said privilege granted by said ordinance No. 115."

It was further alleged as a basis for the injunction sought that the defendant threatens to continue to collect said two per cent of said gross annual receipts, and threatens that if the same is not paid it will take immediate steps for the forfeiture of said privilege, "and threatens to interfere with and obstruct the use and operation of said plant by the said plaintiff," all of which plaintiff verily believes it will do unless restrained, and that "great injury and damage will result therefrom to this plaintiff, not susceptible of computation or compensation in a suit at law, and plaintiff's right to the use of said plant and its works will be permanently interfered with and destroyed, and great damage and waste will be wrongfully inflicted on said plaintiff, and endless litigation will result therefrom."

Plaintiffs claim that the ordinance purporting to grant the assignor the privilege of using the streets of the city for its gas pipes, which was sought and accepted by plaintiff's assignor, is void in so far as it attempts to impose upon the grantee the duty of paying to the city a certain percentage of its gross receipts, is based upon section 19 of article XI of the constitution as it existed prior to the amendment of 1911. That section has several times been held to constitute a grant of the right to use the streets of a city for pipes, conduits, etc., "so far as may be necessary for introducing into and supplying such city and its inhabitants either with gas light or other illuminating light, or with fresh water for domestic and all other purposes," in any city where there are no public works owned and constructed by the municipality for such purposes, to any individual, or any company duly incorporated for such purpose under the laws of this state,

leaving nothing for the city to grant so far as the use of such streets for such purposes is concerned. The charge of two per cent of the annual gross receipts is styled an "annual tax" by plaintiff, but, of course, it is in no proper sense a "tax" at all, but is simply an amount that plaintiff's assignor agreed should be paid annually as a consideration for such privilege as was granted by the city. It is the amount fixed by the contract of the parties, and unless it is paid, the agreement is that "said franchise (the franchise granted by the board of trustees), shall be forfeited." Plaintiff's real point is that inasmuch as it had everything purported to be granted by the city, under and by virtue of the grant contained in the constitution, it has obtained nothing from the city, and that the undertaking to pay the city anything on account of this purported grant was entirely without consideration and unenforceable. The defendant claims that plaintiff has acquired by this contract something from the city in addition to the rights granted by the constitution, and is therefore liable for the stipulated price. It is unnecessary on this appeal to determine the question, for we are satisfied that however it be determined, plaintiff is not entitled to recover the money paid by it and for which it obtained judgment in the lower court.

There is nothing in the complaint to warrant a conclusion that these payments made by plaintiff to defendant were not what are known in law as voluntary payments, free from duress. Unless otherwise provided by statute, as is the case in this state with relation to state and county taxes (Pol. Code, secs. 3804, 3819), one who pays an illegal demand with full knowledge of its illegality, cannot recover it, unless the payment is necessary in order to protect his person or property. As said in *Brumagin* v. *Tillinghast*, 18 Cal. 271, [79 Am. Dec. 176], quoted approvingly in *Maxwell* v. *San Luis Obispo Co.*, 71 Cal. 466, [12 Pac. 484]: "The illegality of the demand paid constitutes of itself, no ground for relief. There must be, in addition, some compulsion or coercion attending its assertion, which controls the conduct of the party making the payment." In *Phelan* v. *San Francisco*, 120 Cal. 5, [52 Pac. 38], where a written protest accompanied the payment, it was said: "If one pays an illegal demand, with full knowledge of its illegality, his protest does not take from the

payment its voluntary character, unless the payment is necessary in order to protect his person or property.'' (See, also, *Rooney v. Snow,* 131 Cal. 51, [63 Pac. 155].) It is unnecessary to cite other authorities on this well settled rule of law. Plaintiff claims that it has alleged facts warranting a conclusion of the duress or coercion essential to make the payments involuntary. We have set forth the allegations relied on. There is nothing therein hinting of duress, menace, or coercion, except the general allegation that the payments were made ''under menace, compulsion and coercion and under a threat that if the same was not paid, proceedings would be instituted for the forfeiture of said privilege, granted by said ordinance No. 115.'' The general allegation as to menace, compulsion, and coercion is not sufficient to show any of these characteristics. It was said in *Lewis* v. *San Francisco,* 2 Cal. App. 114, [82 Pac. 1106], of an allegation that a payment was involuntary, that while this was an allegation of the ultimate fact upon which plaintiff's right of recovery depended, nevertheless, ''as in the case of a cause of action depending upon fraud or negligence, the allegation of this ultimate fact would have been insufficient against a general demurrer unless supported by an averment of the probative facts, and the sufficiency of the complaint is therefore to be determined by a consideration of these probative facts.'' The same is true as to the general allegation of menace, compulsion, and coercion. We have here no averment of any probative fact, except the allegation that the payments were made under a threat of the institution of proceedings for the forfeiture of the privilege granted by the city. In view of the fact that the claim of plaintiff for the recovery of this money is really based on the further claim that it had no privilege granted by the city, its contention that this threat is sufficient to show the duress essential to an involuntary payment is, to say the least, somewhat inconsistent. However this may be, a mere threat to institute a legal proceeding against the plaintiff, ''for the forfeiture of said privilege granted by said ordinance No. 115,'' in which proceeding the validity of the claim of the city could be contested by the plaintiff and its legality determined, is not sufficient to render a payment made by reason thereof compulsory or other than voluntary. (See *Lewis* v. *San Fran-*

*cisco*, 2 Cal. App. 115, [82 Pac. 1106].) None of the cases cited by plaintiff on this question is in point here. The allegations made in support of the claim for relief by injunction are utterly insufficient to warrant the granting of such relief. So far as they attempt to state matters on account of which the equitable remedy by injunction may be invoked, they are entirely wanting in specific statement warranting the inference that an injunction was necessary to protect the plaintiff in so far as any of its rights is concerned.

The judgment is reversed.

Shaw, J., and Sloss, J., concurred.