[Sac. No. 6884. In Bank. Dec. 8, 1959.]

ABBIE F. LEEPER et al., Appellants, v. WILLIAM BEL-
TRAMI, Individually and as Executor, etc., et al., Re-
spondents.

Abbie F. Leeper and Thomas B. Leeper, in pro. per., for Appellants.

John F. Downey, Malcolm S. Weintraub, Downey, Brand, Seymour & Rohwer, Rodegerdts & Means, Chalmers & Sans, Driver, Driver & Hunt, Philip F. Driver, Thomas E. Reynolds, Busick & Busick and Charles O. Busick, Jr., for Respondents.

PETERS, J.—Plaintiffs appeal from a judgment entered after the sustaining of defendants' demurrer without leave to amend. The plaintiffs seek recovery of money paid allegedly under the duress of certain of the defendants. The plaintiffs also seek to recover real property conveyed to another defendant under the same duress. Other defendants, distributees of the estate of one Frank Weber, are joined, but against nearly

all of them, the actions have been dismissed by stipulation. The rights of any remaining distributees are dependent upon the rights of the plaintiffs as against the defendants Beltrami and Scarlett.

The allegations of the complaint can be summarized as follows:

In 1937 plaintiff Thomas Leeper borrowed $10,150 from one Frank Weber. Leeper gave a promissory note and also, as security, a mortgage on certain ranch property owned by Leeper in Sutter County, and another mortgage on ranch property owned by Leeper in Sacramento County. Thereafter, Leeper served as Weber's attorney. By a separate written agreement the fees earned by Leeper in acting as Weber's attorney were to be applied on the debt. Pursuant to this agreement and the services rendered by Leeper, the debt was fully discharged by the year 1951. Although further services were rendered during the year 1951, by mutual agreement between Weber and Leeper, all debts owing each other were canceled, and no other debts were thereafter contracted.

In the year 1951 plaintiff Abbie Leeper, Thomas Leeper's wife, with one George A. Yeary, "went upon the bond of one Greene in the sum of $10,000." The bond was forfeited and the district attorney demanded payment of the $10,000 by Abbie. The district attorney threatened to force an execution sale of Abbie's Sacramento home, her separate property (not the same as the mortgaged Sacramento ranch property). In order to facilitate the payment of the bond by his wife without the necessity of sacrificing the home property, and for other reasons, Thomas Leeper deeded both the Sacramento and Sutter ranch properties to Abbie and Yeary, Yeary's only interest being to pay the bond.

By the fall of 1952 judgment was obtained against Abbie on the bond for $10,000 and execution was levied on her home property. An execution sale was threatened.

In the meantime, Frank Weber, Thomas Leeper's former creditor, had died. On or about August 15, 1952, the representatives of his estate, Beltrami and Scarlett, defendants herein, "falsely plotted to make Leeper and his wife pay said $10,150.00 debt a second time." They filed an action in the Superior Court of Sacramento County to foreclose the mortgages on the Sacramento and Sutter ranch properties. In connection therewith *lis pendens* were filed against the properties in both counties. They knew at this time that nothing was due on either the note or the mortgages securing the same.

On October 28, 1952, Abbie and her fellow bondsman found a purchaser for the *Sutter* ranch property who was willing to pay $18,000, enough to satisfy the bond judgment. The purchaser refused to buy, however, unless Abbie cleared the title of the allegedly false claim pressed by Beltrami and Scarlett. The latter, although they knew the debt had been satisfied, refused to withdraw their claims upon being requested to do so by Abbie.

Because the purchaser would not buy without removal of the cloud on the Sutter property, Abbie was compelled to sell the *Sacramento* ranch to defendant LaVerne Charles Scheidel for $10,760, a third of the actual worth of that property. The sale is alleged to have been made under compulsion arising out of the extortionary claim of defendants Beltrami and Scarlett, and from fear of Abbie's losing her Sacramento home because of the bond judgment.

Scheidel placed the purchase money ($10,760) with a title company, as did the purchaser of the Sutter property ($18,000). From these deposits the title company paid the bond judgment, the allegedly false claims of Beltrami and Scarlett, and the residue to Abbie.

The instant complaint was filed on November 30, 1956. The complaint prayed for recovery of the money paid to Beltrami and Scarlett; recovery of the proceeds of any of that money which had been distributed to legatees of Weber's estate, joined as defendants; recovery of the Sacramento ranch from Scheidel; and, other remedies by way of rents and profits from that property.

In the meantime, Thomas Leeper on June 16, 1952, was imprisoned in state prison after conviction for perjury and conspiracy to commit fraud. His sentence was 22 years. He was released on parole on June 16, 1954, or over two years before the complaint in the instant action was filed. The compulsion by Beltrami and Scarlett is alleged to have commenced on August 18, 1952. The transactions involving the deed to Scheidel and the payments made to and by the title company were all completed not later than January, 1953, since in this month the deed to Scheidel was recorded.

It must first be determined whether the complaint states a cause of action against Beltrami and Scarlett or against Scheidel. The cause of action against Beltrami and Scarlett is separate and distinct from that against Scheidel. The conduct of Beltrami and Scarlett violated the right of plaintiffs Abbie and Leeper to be free from acts constituting duress. Scheidel, on the other hand, owed the plaintiffs the

obligation not to take advantage of the plaintiffs' situation, a situation created by Beltrami and Scarlett, at least in part. Thus the obligations of both sets of defendants give rise to different causes of action.

The defendants did not demur on the ground that separate causes of action were not separately stated. Therefore, this ground of demurrer was waived. But the nature of the causes of action must be differentiated because the substantive law differs as to the obligations owed by each set of defendants, and because the time limitations differ as to the two causes of action. Before these matters can be discussed, the precise nature of the defendants' wrongs must be considered, and considered separately.

I. NATURE OF THE DEFENDANTS' WRONGFUL CONDUCT

A. *Beltrami and Scarlett.*

Against these defendants the complaint attempts to state a cause of action for wrongful acts in the nature of duress which resulted in the payment of an already paid debt by plaintiffs to these defendants as representatives of the estate of Weber, and which collaterally resulted in the transfer of real property from plaintiffs to Scheidel.

Under modern law duress is not limited to threats against the person. It may also consist of threats to business or property interests. (*Sistrom* v. *Anderson,* 51 Cal.App.2d 213, 220-221 [124 P.2d 372]; 5 Williston on Contracts, 4517-4518, § 1617; 40 Cal.L.Rev. 425; Rest., Contracts, § 493.) The modern doctrine has been recognized in California. (*Young* v. *Hoagland,* 212 Cal. 426, 430-431 [208 P. 996, 75 A.L.R. 654]; *Thompson Crane & Trucking Co.* v. *Eyman,* 123 Cal.App.2d 904, 910-911 [967 P.2d 1043].) It has been held that one who falsely clouds the title to real property and then seeks some consideration to remove the cloud is guilty of a wrongful act and may be compelled to restore the consideration recovered by him. (*Wake Development Co.* v. *O'Leary,* 118 Cal. App. 131 [4 P.2d 802]; *Ezmirilian* v. *Otto,* 139 Cal.App. 486 [34 P.2d 774]; *McNichols* v. *Nelson Valley Bldg. Co.,* 97 Cal. App.2d 721 [218 P.2d 789].)

Plaintiffs in the instant case have brought themselves within the doctrine enunciated by the cases. It is alleged in the complaint that the defendants wrongfully, with knowledge of the falsity of the claim, attempted to foreclose on a mortgage which had already been satisfied. Beltrami and Scarlett filed a suit to foreclose the mortgage. A *lis pendens* filed in connection

with that suit clouded the title of the property owned by Abbie so that, because of her situation, she was not able to sell the property without paying the allegedly false claim and conveying other property to Scheidel. Thus plaintiffs have alleged sufficient facts to show that the defendants Beltrami and Scarlett were guilty of duress as against the plaintiff Abbie.

Respondents argue that no duress was involved because they were merely seeking to foreclose a mortgage, a legal remedy. It is contended that the taking of legal action or the threat to take such action cannot constitute duress. This is generally true. (*Hanford Gas etc. Co.* v. *Hanford,* 163 Cal. 108, 112 [124 P. 727] ; *Burke* v. *Gould,* 105 Cal. 277, 283 [38 P. 733] ; *Sistrom* v. *Anderson,* 51 Cal.App.2d 213, 221 [124 P.2d 372].) But the complaint here alleges something more than the threat to take legal action. It alleges that Beltrami and Scarlett, in making such threats, knew the claim asserted was false. This amounts to duress. (Rest., Restitution, § 71; *McNichols* v. *Nelson Valley Bldg. Co.,* 97 Cal.App.2d 721, 724 [218 P.2d 789].)

These respondents also urge that, even if wrongful, their acts were not the proximate cause of plaintiffs' injuries. They correctly point out that some of the circumstances that made the pressing of the claim particularly onerous were not created by them. Thus, the threat of execution of the bond judgment against Abbie's separate home property was the result of Abbie's executing the bond with another. Beltrami and Scarlett had nothing to do with this. But this does not mean that proximate cause has not been sufficiently alleged. Obviously, whenever a defendant presses a false claim against a plaintiff, and the plaintiff is forced to pay it, the primary cause of the payment is that defendant pressed the claim. The other factors relating to the existence of the bond judgment merely created the situation that made the pressing of the false claim successful.

It is also contended that if the plaintiffs had a reasonable alternative to the parting with the consideration to satisfy the false claim, the payment was not made under duress. This is undoubtedly the law. (*Western etc. Oil Co.* v. *Title Ins. & Trust Co.,* 92 Cal.App.2d 257, 265 [206 P.2d 643] ; *Texas Co.* v. *Todd,* 19 Cal.App.2d 174, 188 [64 P.2d 1180] ; *Myers* v. *City of Calipatria,* 140 Cal.App. 295, 299 [35 P.2d 377].) In attempting to bring themselves within this rule, respondents assert that Abbie should have allowed her home property to be sold to satisfy the sheriff's judgment. Then she could have contested the foreclosure action. The conclusion is

unsound. To allow one's home to be sold at a foreclosure sale is not a reasonable alternative. A reasonably prudent person would not take such a course. This is the test. (*Young* v. *Hoagland*, 212 Cal. 426, 431 [208 P. 996, 75 A.L.R. 654].) ▮ Whether Abbie acted as a reasonably prudent person is a question of fact. (*Kolias* v. *Colligan*, 172 Cal.App.2d 384, 386-387 [342 P.2d 265] ; *Steffen* v. *Refrigeration Discount Corp.*, 91 Cal.App.2d 494, 498 [205 P.2d 727].) Under the allegations of the complaint, because of the circumstances in which she found herself, Abbie had no reasonable alternative except to pay the false claim.

▮ Respondents also argue that since the complaint shows that a suit was filed and money paid by Abbie in settlement of that suit, the doctrine of res judicata is applicable as a matter of law. But a party may attack any judgment by showing that it was secured by the extrinsic fraud of the other party. (*Westphal* v. *Westphal*, 20 Cal.2d 393, 397 [126 P.2d 105] ; *Estate of Bialy*, 169 Cal.App.2d 479, 490 [337 P.2d 511] ; 29 Cal.Jur.2d 109, § 160.) ▮ Duress is a species of fraud. (*Tanforan* v. *Tanforan*, 173 Cal. 270, 275 [159 P. 709].)

▮ Plaintiffs have pleaded duress against Beltrami and Scarlett. That being so any consent judgment or judgment of dismissal that may have been entered pursuant to a settlement agreement would not act as a bar to the present action. (*Harper* v. *Murray*, 184 Cal. 290 [193 P. 576].)

Thus the complaint states a good cause of action against Beltrami and Scarlett. Does it do so against Scheidel?

B. *Scheidel.*

It is alleged in the complaint that plaintiff Abbie was compelled to convey the Sacramento ranch property for a third of its actual market value to defendant Scheidel. The conveyance is alleged to have been made as a result of the extortionary claim of Beltrami and Scarlett and from fear that Abbie would lose her Sacramento home property. Scheidel is alleged to have had knowledge of the duress which was being exercised by Beltrami and Scarlett. Plaintiffs seek to have the conveyance of the Sacramento ranch property to Scheidel set aside, and the property restored to plaintiffs. Does this allege a good cause of action against Scheidel?

It is to be noted that no active wrongdoing has been alleged against this defendant. The actual duress was that of Beltrami and Scarlett. Scheidel, however, is alleged to have had knowledge of the situation in which Abbie found herself. Thus, the

question is whether the wrongful acts of a third party constituting duress may be sufficient to allow rescission of a contract with a party, who, although not participating in those wrongful acts, had knowledge of the innocent party's position.

The Restatement of Contracts gives an affirmative answer to this question. Section 496 states that the duress of a third party renders a transaction voidable by a party induced thereby to enter into it under the same circumstances as the rule stated in section 477 relating to fraud. Section 477 reads: "Fraud or material misrepresentation [or duress] by a third person renders a transaction voidable by a party induced thereby to enter into it if the other party thereto (a) has reason to know of the fraud or misrepresentation [or duress] before he has given or promised in good faith something of value in the transaction or changed his position materially by reason of the transaction, . . ." (See also 62 A.L.R. 1477, 1478; 4 A.L.R. 864; *Bumgardner* v. *Corey,* 124 W. Va. 373 [21 S.E.2d 360, 364]; *Wells Fargo Nevada Nat. Bank* v. *Barnett,* 298 F. 689, 691; *McDonald* v. *Pend Oreille Mines & Metals Co.,* 189 Wash. 389 [65 P.2d 1250, 1257].) This is also the rule in California. (*Harper* v. *Murray,* 184 Cal. 290, 294 [193 P. 576]; *Carroll* v. *Carroll,* 16 Cal.2d 761, 770-771 [108 P.2d 420].)

Under the rule of these cases the allegations that Scheidel had knowledge of Abbie's predicament are sufficient to give rise to the right of rescission. Scheidel had no legal right to take advantage, knowingly, of the wrongdoing of third parties. When he did, he "connived" with the wrongdoers as that term is used in the statute relating to rescission. (Civ. Code, § 1689.) The very fact that the conveyance was for an allegedly inadequate consideration, under the cases, is of some importance in determining whether or not it was made under duress. (*Pipes* v. *Webb,* —— Miss. —— [111 So.2d 641, 643].)

For the foregoing reasons, it must be held that the complaint, so far as the substantive law is concerned, states a cause of action against the three defendants. This brings us to the real question presented and that is whether the statute of limitations is applicable to any of the causes of action stated.

## II. · TIME LIMITATION PROBLEMS

The complaint alleges that the "conspiracy" by which Beltrami and Scarlett plotted to collect the obligation owing Weber a second time was initiated on August 18, 1952. The complaint also alleges that the deed to Scheidel was recorded in January, 1953. Thus it appears that all the transactions involved, i.e., the payment of all funds to the title company, the

delivery of the deed to Scheidel, the payment of moneys by the title company to Beltrami and Scarlett, took place no later than January, 1953. The complaint in this action was filed November 30, 1956, or over three years from the consummation of all the transactions. The effect of this delay must be considered separately as to (1) Beltrami and Scarlett, and (2) Scheidel.

A. *Beltrami and Scarlett.*

From the prayer of the complaint and the facts alleging the nature of the wrongdoing of Beltrami and Scarlett, it is clear that all that the plaintiffs are seeking against these defendants is a sum of money, viz., the $10,150 plus interest allegedly collected a second time from plaintiffs by the defendants. The theory of recovery is not clear. But whether it be considered a suit for restitution to recover money paid under duress (Rest., Restitution, §§ 70, 71, *supra*), or an action for money had and received sounding in tort (see *Woodham* v. *Allen,* 130 Cal. 194, 198 [62 P. 398]), or, simply an action for money damages for the tortious conduct of the defendants resulting in injury to the plaintiffs, the basic nature of the wrongdoing of these defendants is duress.

It must be determined, therefore, what statute of limitation applies when the prayer for recovery is based on a defendant's duress. There is little authority on this point. The Code of Civil Procedure does not specifically provide for such an action, but it would seem that section 338 is applicable. Subdivision four of that section states that within three years must be brought: "An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Duress, as already pointed out in another connection is a species of fraud. It also should be held that duress is fraud for purposes of the statute of limitations. This is the conclusion reached by a federal court applying California law. (*Tidwell* v. *Richman* (D.C., S.D., Calif. 1953), 127 F. Supp. 526, 534.)

The two types of wrongdoing, duress and fraud, are often factually closely interconnected and indistinguishable. (See e.g., *Sears* v. *Rule,* 27 Cal.2d 131 [163 P.2d 443].) A person who presses an unfounded claim to obtain money from an innocent party, who finds he must pay because of the circumstances in which he finds himself, is certainly guilty of fraudulent conduct. The entire conduct reeks of fraud. The very pressing of a false claim with knowledge of its falsity

constitutes a misrepresentation, which is the backbone of what we know as ordinary fraud.

For these reasons, it must be held that subdivision four of section 338 is applicable where the gravamen of plaintiff's action is duress. Since the injury to plaintiffs from the acts of Beltrami and Scarlett arose more than three years before the filing of the complaint, the action must fail as to Beltrami and Scarlett, unless the plaintiffs can bring themselves within some exemption so as to have tolled the statute of limitations. No such exception is alleged.

Plaintiff Thomas Leeper contends that as to him the statute of limitations was tolled and that the filing of the complaint with regard to himself was therefore timely. He relies on section 352 of the Code of Civil Procedure, which reads: ''If a person entitled to bring an action, mentioned in chapter three of this title [including § 338], be, at the time the cause of action accrued, either: 1. Within the age of majority; or, 2. Insane; or, 3. *Imprisoned on a criminal charge, or in execution under the sentence of a criminal Court for a term less than for life;* . . . —The time of such disability is not a part of the time limited for the commencement of the action.'' (Emphasis added.) The complaint alleges that the plot on the part of Beltrami and Scarlett commenced *August 15, 1952,* and was consummated sometime during or before *January, 1953.* The amended complaint shows that the plaintiff Thomas Leeper was convicted of a felony [perjury and conspiracy to defraud], sentenced for a term of 22 years, and was confined in prison commencing *June 16, 1952.* Thus, all the wrongful acts of the defendants are alleged to have taken place *after* Thomas Leeper was in state prison. It is apparent that the cause of action, if any, must have accrued during Leeper's incarceration. Leeper was released on parole on *June 16, 1954.* Nothing appears in the record as to whether he was then restored to his civil rights, but that is the earliest date the cause of action in his favor accrued. The complaint was filed on *November 30, 1956,* or less than three years after plaintiff Leeper's release. Thus, as regards the plaintiff Thomas Leeper, section 352 tolls the statute as against Beltrami and Scarlett, because the effect of section 352 is to delay the commencement of the running of the statute until the disabilities therein mentioned have ceased.

Does the fact that the statute was tolled as to Thomas Leeper help Abbie or only Thomas Leeper? If the cause of action were a joint one, the statute would be tolled

as to both. "If an action not severable is not barred as to one of the parties on account of his infancy at the time the cause of action arose, it is not barred as to either of the other parties." (2 Wood on Limitations (4th ed. 1916) 1079.) The right of Abbie and Thomas to maintain their actions was not joint. Normally parties are not joint obligees unless they have entered a contract together which operates so as to give them a joint right of action (see e.g., *Greenfield v. Sudden Lumber Co.,* 18 Cal.App.2d 709, 719-720 [54 P.2d 1007]; 2 Witkin, California Procedure, 1054, § 77; 37 Cal. Jur.2d 338, § 19), or, unless a defendant or defendants have injured a property interest owned by plaintiffs in some form of joint ownership. (Clark, Code Pleading, (2d ed. 1947) 350.) Plaintiffs Abbie and Thomas Leeper do not base their action on a joint obligation owed them under a contract. The contractual debt allegedly satisfied and pressed for a second time by Beltrami and Scarlett was that of Thomas alone. Further the property interest of Thomas and Abbie was not joint. It is alleged that Thomas conveyed property to Abbie which was sold to satisfy the unfounded claim: No joint interest was created thereby. The complaint also alleges that Abbie has reconveyed to herself and Thomas as joint tenants any interest which she has in the Scheidel property. This conveyance was after the facts giving rise to any right in either plaintiff and is not sufficient to render the cause of action of either plaintiff a joint one. Thus, there is no authority for holding that the statute of limitations is tolled as to Abbie's right of action merely because it was tolled as to Thomas.

Since the statute was tolled as to Thomas Leeper but not as to Abbie it must be determined whether a cause of action accrued as to Thomas Leeper while he was in jail against Beltrami and Scarlett.

The complaint alleges that Abbie had gone upon the bond of one Greene, along with another bondsman, one Yeary. The bond was forfeited, and judgment was ultimately entered against Abbie and Yeary. Abbie was in fear of losing her Sacramento home property (her separate property) through an execution and sale pursuant to said judgment. To prevent this from happening, Thomas conveyed both the Sacramento and Sutter ranch properties to Abbie and Yeary. It is alleged that "[O]ne of the purposes of said deed to said ranches was to enable said bondsmen to pay off said $10,000.00 Greene bond, and the judgment obtained thereon." By the amended

complaint, plaintiffs have alleged a further purpose or consideration for the conveyances: ''[A] further consideration for Leeper conveying said property to his wife was that any property not needed by her to satisfy the $10,000 judgment on the Greene bond, . . . should be held by her and used for the joint support of Leeper and his wife after Leeper's discharge from prison; . . .''

It is seen from the facts surrounding the conveyance of the Sacramento and Sutter ranch properties from Thomas to Abbie, that Abbie as between herself as grantee and Thomas as grantor did not have an unrestricted title to the property. Her authority with regard to the property was limited to selling it in order to satisfy the outstanding bond judgment against her, and to retaining the proceeds from such a sale for the joint support of herself and Thomas after the latter's release from jail. The debt that Beltrami and Scarlett were trying to collect a second time was that of Thomas. Abbie was not authorized under the conveyance from Thomas to use the proceeds of the sale to pay Thomas's debt. She was forced to pay the debt a second time because of the duress exercised by Beltrami and Scarlett. The latter accepted payment from the title company in full satisfaction of Thomas's debt. Abbie, in her dealings with Beltrami and Scarlett, must have been acting as Thomas's agent. ▮▮▮ Where a third party exercises fraud or duress in obtaining payment from an agent, the principal has a cause of action against the wrongdoer. (2 Mechem on Agency (2d ed.) 1661, § 2089; Rest., Agency 2d, § 315, § 100, comment c.; *Gammon* v. *Ealey & Thompson,* 97 Cal.App. 452, 462 [275 P. 1005].)

Under this rule since Beltrami and Scarlett coerced Abbie not only to act as agent of the plaintiff Thomas, but also to pay the debt of Thomas a second time, the principal Thomas had a right to recover the money if Thomas would have had a right had the coercion been exercised directly against him.

▮▮▮ Plaintiff Thomas therefore had a cause of action accruing in his favor as of the time of the wrongful acts of Beltrami and Scarlett directed toward his wife. The cause of action accrued at the time Thomas was imprisoned. The statute of limitations did not commence to run at least until he was released. The complaint was timely filed as to Thomas against Beltrami and Scarlett. Therefore, the sustaining of the general demurrer as to Thomas was improper and in this regard the trial court must be reversed.

B. *Time Limitations as to Scheidel.*

The facts relating to time as respect Beltrami and Scarlett are the same as to defendant Scheidel. The transaction which plaintiffs claim gives them a right of action against Scheidel was consummated not later than January, 1953. But the nature of the relief sought against Scheidel varies from that sought against Beltrami and Scarlett. Plaintiffs seek to have an executed deed, that is, the conveyance of certain property from plaintiff Abbie to defendant Scheidel, set aside or cancelled; they seek to have their title quieted to the property involved as against Scheidel, and to have a reconveyance of said property from Scheidel to themselves. The deed which the plaintiffs are attacking arose out of what appears to have been a contract between Abbie and Scheidel whereby Abbie conveyed the land to Scheidel for a consideration of $10,000 paid over by Scheidel to Abbie. Plaintiffs claim that this contract and the conveyance which grew out of it are not now binding because of the acts of duress of Beltrami and Scarlett of which the grantee Scheidel is alleged to have had knowledge. It has already been concluded that the allegations in this respect are sufficient. But, the problem remains as to whether or not the plaintiffs are precluded by their delay from the relief which they seek. Over three years passed from the conveyance of land to Scheidel until the filing of the complaint in this action, and over two years elapsed from plaintiff Thomas's release from jail until the filing of the complaint.

If the action be considered one for rescission the plaintiffs are barred by reason of their delay. Rescission, whether legal or equitable, will not be permitted unless the plaintiff acts promptly in rescinding. (*Estrada* v. *Alvarez*, 38 Cal.2d 386, 390 [240 P.2d 278]; Civ. Code, § 1691; *Toby* v. *Oregon Pac. R. R. Co.*, 98 Cal. 490, 499 [33 P. 550]; 9 Cal.Jur.2d 570, et seq.)

The complaint here shows on its face a two-year delay as to one plaintiff and a three-year delay as to the other, before plaintiffs attempted to rescind. Such a delay, unexplained, precludes relief. (*Victor Oil Co.* v. *Drum*, 184 Cal. 226, 243 [193 P. 243].) The failure to act promptly results in a waiver of the right to rescind. (*Pearson Candy Co.* v. *Waits*, 27 Cal.2d 615, 620 [165 P.2d 674]; *Neet* v. *Holmes*, 25 Cal.2d 447, 458 [154 P.2d 854].) Where, as here, no explanation is given in the complaint for a substantial delay after knowledge of the facts giving rise to the

right to rescind, the complaint is demurrable. (*Bancroft* v. *Woodward,* 183 Cal. 99, 109 [190 P. 445]; *Gedstad* v. *Ellichman,* 124 Cal.App.2d 831, 834 [269 P.2d 661]; *Clanton* v. *Clanton,* 52 Cal.App.2d 550, 555 [126 P.2d 639]; *Williams* v. *Smith,* 127 Cal.App.2d 607, 612 [274 P.2d 204]; *King* v. *Los Angeles County Fair Assn.,* 70 Cal.App.2d 592, 596 [161 P.2d 468].)

Plaintiffs, in an attempt to escape the rule of these cases, contend that this action is not for rescission, but one for the recovery of real property, and that the applicable code section is section 318 of the Code of Civil Procedure providing a five-year period for the bringing of an action to recover real property or its possession. If the action is one essentially to recover the real property, the five-year section applies. (*Murphy* v. *Crowley,* 140 Cal. 141 [73 P. 820]; *Goodnow* v. *Parker,* 112 Cal. 437 [44 P. 738]; *Oakland* v. *Carpentier,* 13 Cal. 540; *Campbell* v. *Genshlea,* 180 Cal. 213 [180 P. 336]; see also *South Tule etc. Ditch Co.* v. *King,* 144 Cal. 450, 455 [77 P. 1032]; *Brazil* v. *Silva,* 181 Cal. 490, 498-500 [185 P. 174]; *People* v. *Kings County Development Co.,* 177 Cal. 529, 534-536 [171 P. 102]; *Cox* v. *Schnerr,* 172 Cal. 371 [156 P. 509] (dictum); *Pierce* v. *Freitas,* 131 Cal. App.2d 65 [280 P.2d 67] (dictum); *Earl* v. *Lofquist,* 135 Cal.App. 373, 379 [27 P.2d 416].)

The authorities on this subject are in confusion. Thus, it has been held that where the action is to cancel a deed, even though the ultimate aim of the action is to recover real property, section 343 of the Code of Civil Procedure is applicable. That is the section providing for a four-year time limit as a catchall for actions not previously specifically covered. (*Wade* v. *Busby,* 66 Cal.App.2d 700, 702 [152 P.2d 754]; *Zakaessian* v. *Zakaessian,* 70 Cal.App.2d 721 [161 P.2d 677].) It has also been held that where the gravamen of the action is fraud, the three-year provision of section 338, subdivision 4, applies, even if the relief prayed for is cancellation and the recovery of real property. (*Turner* v. *Milstein,* 103 Cal.App.2d 651 [230 P.2d 25]; *Hart* v. *Walton,* 9 Cal.App. 502 [99 P. 719]; *Lightner Mining Co.* v. *Lane,* 161 Cal. 689, 702 [120 P. 771, Ann.Cas. 1913C 1093]; *Unkel* v. *Robinson,* 163 Cal. 648 [126 P. 485]; *Douglas* v. *Douglas,* 103 Cal. App.2d 29 [228 P.2d 603].)

It is apparent that, where a plaintiff brings an action to recover real property either by a quiet title action or by a suit to cancel or set aside a deed, and his success de-

pends upon the ability to show that defendant was guilty of fraud or duress, there is considerable confusion in the cases as to which limitation statute applies. At least three different statutes have been held applicable—section 318, the section fixing a five-year period for the recovery of real property; section 343, the section providing a four-year period for actions not otherwise covered; and section 338, subdivision (4), the section providing for a three-year period after discovery for fraud actions. It has also been held that the promptness requirement applicable to rescission actions applies. This confusion apparently arises out of the failure of the cases to consider adequately the basic rights of the plaintiff arising out of defendant's wrongful conduct, and the failure to consider the substantive rules applicable to these basic rights.

In the instant case the relief sought is to have the deed to Scheidel rescinded, plaintiffs' title quieted, and Scheidel compelled to execute a new deed to plaintiffs. Thus the question is whether, because the ultimate relief sought is recovery of real property, the five-year provisions of section 318 are automatically applicable, or should the plaintiffs be held to the ordinary rules applicable to rescission?

There are many cases holding that quiet title actions are of an independent nature completely divorced from the facts that give rise to the plaintiff's right to have his title quieted. Thus it has been held that a complaint couched in general terms alleging plaintiff's ownership and defendant's assertion of an adverse claim is not demurrable. (*Jose Realty Co.* v. *Pavlicevich,* 164 Cal. 613 [130 P. 15]; *Moore* v. *Copp,* 119 Cal. 429 [51 P. 630]; *Brooks* v. *Johnson,* 122 Cal. 569 [55 P. 423]; *White* v. *Stevenson,* 144 Cal. 104 [77 P. 828]; *Wendling etc. Co.* v. *Glenwood etc. Co.,* 153 Cal. 411 [95 P. 1029]; *Taliaferro* v. *Crola,* 152 Cal.App.2d 448 [313 P.2d 136].) It has also been held that if a complaint is in two counts, one in general terms for quiet title, and the other specifying the defendant's wrongdoing which is the basis of the quiet title action, the complaint is not demurrable even though the specific count is faulty. (*California-Michigan L. & W. Co.* v. *Fletcher,* 206 Cal. 392, 394 [274 P. 527]; *Aalwyn* v. *Cobe,* 168 Cal. 165, 167 [142 P. 79].) These cases seem to hold that suits to recover real property, where the relief sought is quiet title, must be viewed independently from the grounds upon which the relief is sought, and that the five-year statute is applicable.

On the other hand, the more modern rule places more

214

emphasis on the basic rights involved. Thus it has been held that, where the complaint is in two counts, one to quiet title, and one to cancel a deed, if the count to quiet title depends upon the cancellation count, the complaint must stand or fall on the cancellation count. (*Ephraim* v. *Metropolitan Trust Co.*, 28 Cal.2d 824, 833 [172 P.2d 501].) And there are many cases holding that, where the legal title is in the defendant, and the plaintiff seeks to quiet title on the ground defendant's title was secured from plaintiff by fraud, the plaintiff must plead and prove facts constituting the fraud. (*Burris* v. *Adams*, 96 Cal. 664, 667 [31 P. 565]; *Burris* v. *Kennedy*, 108 Cal. 331 [41 P. 458]; *Virginia etc. Co.* v. *Glenwood Lumber Co.*, 5 Cal.App. 256 [90 P. 48]; *Estate of Yoell*, 164 Cal. 540, 546 [129 P. 999].) It has been held that this rule requiring allegations of fraud in such actions is an exception to the general rule that a cause of action to quiet title may be stated in general terms. (*Thompson* v. *Moore*, 8 Cal.2d 367, 372 [65 P.2d 800, 109 A.L.R. 1027]; *Kroeker* v. *Hurlbert*, 38 Cal.App.2d 261, 265 [101 P.2d 101]; *Moss Estate Co.* v. *Adler*, 41 Cal.2d 581, 584 [261 P.2d 732]; *Borneman* v. *Salinas Title Guar. Co.*, 66 Cal.App.2d 500 [152 P.2d 649].)

Thus the modern tendency is to look beyond the relief sought, and to view the matter from the basic cause of action giving rise to the plaintiff's right to relief. This approach is a sensible one.

In the instant case plaintiff Abbie and defendant Scheidel entered into a contract for the sale of land. Abbie's basic right is to rescind based on Scheidel's fraud. Normally a party is required to rescind promptly after knowledge. The complaint shows on its face that plaintiff did not rescind promptly after knowledge. Thus the realistic approach is to hold that the complaint is demurrable regardless of the form in which the prayer for relief is couched.

The matter can be stated very simply. Plaintiffs' right to quiet title depends on their right to get out of the contract of conveyance. That right depends upon whether, at the time of filing the complaint, the plaintiffs had a right to rescind. Such right requires prompt action after knowledge. The complaint shows a long unexcused delay after plaintiffs knew of the wrongful actions of defendant. Ergo, the complaint should be demurrable.

This approach is not unknown to California law. In *Burris* v. *Kennedy*, 108 Cal. 331 [41 P. 458], the court posed the

following hypothetical problem: "A desires to defraud B by inducing him to sell to A his land for half its value. He employs C to assist in deceiving and defrauding B, and for such services promises him one thousand dollars, and gives his note for that amount. The fraud having been consummated, the court will not aid C in the collection of his note, but will hold it void. But B cannot assume that his deed is void and sue A in ejectment to recover the land; *he must rescind,* and bring his action alleging the acts of fraud." (108 Cal. at p. 342, emphasis added.) The court went on to hold that the fact that the defendant pleaded the instrument under which the defendant claimed did not aid the plaintiff, since such pleading did not reveal that the plaintiff relied on the fact that the instrument was obtained by fraud: "But in no event would the answer change the theory of plaintiff's action, or constitute notice that he relied upon fraud. He would have been compelled in this case not only to set up the fraud but to seek a rescission of the fraudulent sale." (108 Cal. at p. 344; see also *Kroeker* v. *Hurlbert,* 38 Cal. App.2d 261, 265-266 [101 P.2d 101].)

The same rule is applicable if the action be considered as one for cancellation of a deed. If the right asserted depends upon the right to rescind, the plaintiff must act promptly or he is barred. (*Barkley* v. *Hibernia Sav. etc. Soc.,* 21 Cal.App. 456, 458 [132 P. 467]; see also *Cross* v. *Mayo,* 167 Cal. 594, 602 [140 P. 283]; *Clanton* v. *Clanton,* 52 Cal. App.2d 550, 556 [126 P.2d 639]; *Meyer* v. *Haas,* 126 Cal.App. 560, 563 [58 P. 1042]; *O'Meara* v. *Haiden,* 204 Cal. 354, 363 [268 P. 334, 60 A.L.R. 1381].)

There is one case decided by this court that is contrary to the above cases. That case is *Thompson* v. *Moore,* 8 Cal.2d 367 [65 P.2d 800, 109 A.L.R. 1027]. There plaintiffs, owners of property in San Francisco, and defendants, owners of property in Yolo County, were negotiating an exchange. Defendants misrepresented the value of the Yolo County property. Plaintiffs, as part of the exchange, gave defendants a note secured by a trust deed on the Yolo property. Upon discovering the fraud, plaintiffs brought an action to quiet their title to the Yolo County property and to cancel the trust deed. The court held that the complaint, although framed in two counts, stated but one cause of action, and that was an action to quiet title. The court (p. 371) specifically held that the action was not one to rescind.

The case has been criticized (see annotation 109 A.L.R.

1032) on somewhat technical but persuasive grounds. The case is also subject to a nontechnical objection. Plaintiffs' right to quiet their title depended upon a successful attack on the trust deed by a showing that defendants were guilty of fraud in its procurement. Thus the court was not realistic when it held that the cause of action to cancel the deed was merely "incidental" to the quiet title action. The court should have held that the quiet title action was incidental to the action to cancel the deed. It is apparent that the quiet title suit was completely dependent upon plaintiffs' success in attacking the trust deed. The court in the *Thompson* case was undoubtedly correct in holding that facts alleged in a complaint authorizing relief both to quiet title and to cancel an instrument state but one cause of action. That is undoubtedly the law. (See *Parsons* v. *Weis*, 144 Cal. 410, 414 [77 P. 1007]; *Beronio* v. *Ventura County Lumber Co.*, 129 Cal. 232, 235 [61 P. 958, 79 Am.St.Rep. 118]; *California Trust Co.* v. *Cohn*, 214 Cal. 619, 628 [7 P.2d 297]; *Wood* v. *Roach*, 125 Cal.App. 631, 640 [14 P.2d 170].) But this does not mean that the cause of action is necessarily one to quiet title. Quieting title is the relief granted once a court determines that title belongs in plaintiff. In determining that question, where a contract exists between the parties, the court must first find something wrong with that contract. In other words, in such a case, the plaintiff must show he has a substantive right to relief before he can be granted any relief at all. Plaintiff must show a right to rescind before he can be granted the right to quiet his title. The *Thompson* case permits a plaintiff who has executed a contract to secure relief by simply couching his cause of action in terms of quiet title, and thus permits him to avoid and evade the normal requirements of a cause of action to avoid that contract. This is pure formalism and should not be countenanced. The case is disapproved.

The requirement that one entitled to rescission must act promptly is a salutary rule. (*Hammond* v. *Wallace*, 85 Cal. 522, 531 [24 P. 837, 20 Am.St.Rep. 239]; *Oppenheimer* v. *Clunie*, 142 Cal. 313, 320 [75 P. 899].)

For the foregoing reasons, it is concluded that plaintiffs' action as to Scheidel must fail since plaintiffs have not stated any facts to excuse their delay in seeking rescission of the contract under which Scheidel acquired the title plaintiffs seek to have set aside. In the absence of some statement on the issue it must be presumed that no facts excusing the delay

exist. (*Williams* v. *Smith*, 127 Cal.App.2d 607, 612 [274 P.2d 204].)

The judgment is affirmed as to Scheidel. The judgment is affirmed against Abbie Leeper and in favor of Beltrami and Scarlett. The judgment in favor of the residuary legatees against Abbie Leeper is affirmed, but such judgment in favor of such legatees as against Thomas Leeper is reversed. The judgment against Thomas Leeper and in favor of Beltrami and Scarlett is reversed, except as such judgment includes a cause of action assigned to Thomas Leeper by Abbie Leeper which is affirmed because barred by the statute of limitations. Justice requires that all parties should bear their own costs on this appeal. It is so ordered.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., McComb, J., and White, J., concurred.

The petitions of appellants and of respondents William Beltrami, Athens Masonic Lodge, Masonic Homes and Shriners Hospital for Crippled Children for a rehearing were denied December 30, 1959, and the opinion and judgment were modified to read as printed above.