JACK WINTER, INC., a corporation,
Plaintiff,

v.

KORATRON COMPANY, Inc., a corporation, Defendant.

KORATRON COMPANY, Inc., a corporation, Counterclaimant,

v.

JACK WINTER, INC., a corporation,
Counterclaim defendant.

And All Cases Consolidated for
Pretrial Purposes.

Civ. A. No. 49392 and other cases, Nos. 47273, 49558, 49671, 49913, 50063, 50827, 50854, 51281, 51301, 51650, 51653, 51654 and 51691.

United States District Court,
N. D. California,
San Francisco Division.
April 30, 1971.

See also D.C., 327 F.Supp. 206.

———◆———

Foley & Lardner, by Timothy C. Frautschi, Marvin E. Klitsner, Milwaukee, Wis., Eckhoff & Hoppe, by Carl Hoppe, San Francisco, Cal., for Jack Winter, Inc.

Heller, Ehrman, White & McAuliffe, by Lloyd W. Dinkelspiel, Jr., M. Laurence Popofsky, Stephen V. Bomse, Ellis & Levy, by Willard L. Ellis, Flehr, Hohbach, Test, Albritton & Herbert, by Paul D. Flehr, Limbach, Limbach & Sutton, by John P. Sutton, San Francisco, Cal., for Levi Strauss & Co.

Phelps, Hall & Keller, by Glen E. Keller, Denver, Colo., Watson, Leavenworth, Kelton & Taggart, by Thomas V. Heyman, Albert Robin, New York City, for Bayly Mfg. Co.

Richards, Harris & Hubbard, by D. Carl Richards, Dallas, Tex., for Amory Garment Co. and Haggar Co.

Watson, Leavenworth, Kelton & Taggart, by Thomas V. Heyman, Albert Robin, New York City, Miller, Groezinger, Pettit, Evers & Martin, by Harold C. Nachtrieb, Anthony G. Wilson, San Francisco, Cal., for Henry I. Siegel Co., Inc.

King & Spalding, by Charles H. Kirbo, Charles M. Kidd, Atlanta, Ga., for Oxford Industries, Inc.

Brobeck, Phleger & Harrison, by Moses Lasky, Robert S. Daggett, Richard C. Wydick, San Francisco, Cal., Lyon & Lyon, by James W. Geriak, Los Angeles, Cal., for Koratron Company, Inc. and Koracorp Industries, Inc.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, by Simon H. Rifkind, Jay H. Topkis, Bernard Ouziel, Curtis, Morris & Safford, by Robert D. Spille, New York City, for Deering Milliken, Inc.

Morrison, Foerster, Holloway, Clinton & Clark, by Girvan Peck, San Francisco, Cal., Hunton, Williams, Gay, Powell & Gibson, by Lewis T. Booker, Richmond, Va., Morgan, Finnegan, Durham & Pine, by John C. Vassil, New York City, for Dan River Mills, Inc.

## MEMORANDUM OPINION AND ORDER RE MOTION OF DAN RIVER MILLS, INC. FOR SUMMARY JUDGMENT AS TO THIRD–PARTY COMPLAINT

WILLIAM E. DOYLE, District Judge.

This is an additional facet of the so-called Koratron litigation. Orders with respect to motions for summary judgment have been issued recently, following extensive hearings on February 25–26, with respect to the validity of the '432 patent and contentions of non-infringement of the patent. Koratron has filed a third-party complaint against Dan River Mills, Inc., seeking recovery of all or substantially all of the damages which may be recovered by the Koratron adversaries on the basis that Dan River allegedly coerced Koratron into entering an agreement not to prosecute users of Dan River fabrics on the basis of alleged infringement of Koratron U. S. Patent No. 2,974,432.

Koratron has also asserted a claim that Dan Press fabric is within the scope of the '432 patent, whereby the use of the Dan Press fabric by Dan River's garment makers constitutes an infringement of the '432 patent. In addition, there is a claim for relief asserted on the common law ground of economic duress or coercion. The present motion for summary judgment by Dan River focuses on the Koratron contention that Dan River coerced Koratron into executing the agreement.[1]

By way of explanation it should be mentioned that the adversaries have charged Koratron with violation of the antitrust laws in connection with the execution of the Dan River agreement. We have heretofore concluded that Koratron is not barred from asserting this claim. This decision was based on decisions of the Supreme Court in Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), and Simpson v. Union Oil Co. of California, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). In other words, we ruled that the doctrine of *in pari delicto* did not come into play in the face of allegations such as those made by Koratron that the antitrust violations were precipitated by Dan River.

It is pointed out by Dan River that the common law claim is probably barred by the California statute of limitations since the claim was filed more than three years after the happening. We need not consider this matter at this time.

Similarly, we have denied the motion for summary judgment based upon the invalidity as a matter of law of the '432 patent, and there is no occasion here to reconsider that issue. Hence, the third-party claim asserting infringement of

1. Paragraph 10 of the third-party complaint alleges that:

Said Exhibit A (the Dan River Agreement) and the arrangement and agreement, if any, involved therein was conceived, originated, initiated and formulated by Dan River and were imposed and thrust upon the then president of Koratron and on Koratron by Dan River by duress and economic compulsion.

the '432 patent is not now before us. Dan River argues that when the other rulings were made the facts had not been developed, but now discovery is virtually completed and no evidence of coercion has been forthcoming.

One other preliminary matter is the apparent assumption of Koratron that the *Perma Life* case automatically gives rise to a claim for relief by one tortfeasor against another. In other words, that there is a *right* to have ultimate fault determined as between two such wrongdoers at a trial. We do not read the *Perma Life* decision as so holding. This decision does not set forth independent requirements for an antitrust cause of action based on coercion. Instead, we view it as holding that if a plaintiff otherwise has such a cause of action, he is not to be barred by some artificial doctrine such as *in pari delicto*. It is true that in the *Perma Life* case the Court noted that the plaintiff had not actively supported the monopolistic scheme, but rather that it had it thrust upon it.

We find no fault in the allegations of the third-party complaint having to do with this subject and we have previously so ruled. *Perma Life* does not, however, dispense with the need for evidence that the party claiming coercion was indeed coerced, and it is that evidence that we must evaluate at the present time.

■ Koratron's strongest basis for claiming coercion arises from Dan River's threat of a suit challenging the validity of its patent, which threat took place during negotiations leading to the 1965 agreement. It is said that the threats were made in bad faith since, it is asserted, Dan River knew that the threat was false. *See* Leeper v. Beltrami, 53 Cal.2d 195, 1 Cal.Rptr. 12, 347 P. 2d 12 (1959). As the court in *Leeper* pointed out, threats to take legal action do not generally constitute duress. They amount to duress only where the person asserting the claim knew at the time he asserted it that it was false. In addition to showing that the acts of Dan River were coercive in nature (e. g.,

making false threats), we think that Koratron must show that their acceptance of the terms of the agreement was involuntary and that the circumstances permitted no other alternative. *See, e. g.,* Williston, Contracts § 1603 (Rev. ed.).

■ Using the above legal description of Koratron's cause of action as a standard, we proceed to evaluate the factual material presented to ascertain whether there are any genuine and material issues of disputed fact or whether the underlying evidence gives rise to conflicting inferences of ultimate material fact. If there are none, we must then determine whether the undisputed, unambiguous facts establish that the party moving for summary judgment (in this case the third-party defendant, Dan River Mills) is entitled to judgment as a matter of law.

As noted, the central ultimate fact alleged by Koratron is the claim that Dan River's threat of suit was false and that Dan River knew at the time that the threat was false. But Dan River has presented considerable deposition testimony to the effect that Dan River was deadly serious about instituting suit to test the scope and validity of Koratron's '432 patent, if the negotiation which were being conducted failed to settle the litigation (over patent infringement) then pending between Koratron and one of Dan River's customers (whom Dan River had indemnified).

Mr. Goodson, who conducted the 1965 negotiations with Koratron on behalf of Dan River, testified that he had obtained the opinions of two patent law firms that Dan River's Dan Press manufacturing process did not infringe the Koratron '432 patent and that in any event the validity of Koratron's '432 patent was highly questionable. This was also the professional opinion of Mr. Goodson, who was himself an attorney. Goodson further testified that he had made specific arrangements with the law firm of Morgan, Finnegan, Durham and Pine to represent Dan River in the (threatened) litigation and to file suit on the Monday following the week of ne-

gotiations with Koratron—in the event that these negotiations would have failed.

Koratron, on the other hand, urges that there are other facts from which a conflicting inference arises to the effect that Goodson (and thus Dan River) did not have a good faith belief in the validity of Dan River's legal claims. These facts are set forth in Koratron's brief.[2]

Since *Perma Life,* as previously mentioned is inapplicable to the question before this Court, this Court must decide whether the facts cited by Koratron give rise to a permissible inference that Goodson knew Dan River's legal claims to be false at the time he negotiated the 1965 agreement with Koratron (acting through its then president, Mr. Greenberg). The standard applicable to the facts is the same as or similar to the standard of evaluating permissible inferences which may be allowed to a jury in a jury trial. Basic facts giving rise to deductions or inferences which have some substance are necessary and mere suspicions or possibilities are obviously inadequate.

As we view it, the factual information presented by Koratron bearing on the issue of bad faith of Dan River in threatening to sue is insubstantial, at least at present. We have only one reservation on this subject, and that is whether the Dan River correspondence and memos by Mr. Goodson and others, which documents have been examined *in camera* and ruled not discoverable as lawyers work products, might shed some light on the subject in view of the fact that the issue has developed so as to turn on whether there was a good faith intent to sue. It seems desirable for the Court to once again examine the documents which were previously submitted by counsel for Dan River and to reconsider whether good cause exists for requiring that they be made available to Koratron. We are not saying that they have relevance. We are merely saying that we do not recall what, if anything, the documents said on this subject.

An alternative ground for granting summary judgment in this case is the conclusion (which may be reached) that the undisputed facts relied on by Dan River preclude another essential element of Koratron's coercion claim—namely that the decision of Mr. Greenberg on behalf of Koratron to enter into the

---

2. Goodson's outside patent counsel, Mr. Sabol, had given Goodson two opinions on the scope of the '432 patent containing utterly irreconcilable views on the existence of file wrapper estoppel. * * * Goodson had formerly been senior to Sabol in Sabol's patent firm. * * * Sabol's first opinion * * * said that a garment made of Goodson's Dan Press fabric had only a 50–50 chance not to infringe the '432 patent, and Goodson marked this "confidential" and withheld it from his management. * * * A later, more favorable opinion was circulated among management. * * * Goodson threatened Greenberg with a New York suit charging invalidity of the '432 patent under 35 U.S.C. § 102, but Goodson admits he knew of no ground for invalidity under § 102 after studying the patent, the file wrapper and prior art. * * * Goodson testified that he thought the validity of the '432 patent could be attacked under § 103 as obvious in view of a patent issued to Corteen. But this testimony is incredible, for if Corteen has that effect, it would also invalidate patentability of Dan Press in which the

contrary has been asserted by Goodson in both United States and Canadian patent applications. * * * Goodson admits that he believed a § 103 defense might well fail because the presumption of patent validity and because of Koratron's "great commercial success" which he knew was an important factor bearing on validity. * * *

Goodson affirmatively misrepresented the Dan Press process to Mr. Hochstaedter of Koratron in 1964 * * * by a writing describing Dan Press as containing a resin "in fully reacted form," i. e., as in old wash 'n wear fabric, and we now know that in fact some Dan Press fabrics failed 35% to 100% of the time to meet the specifications set out in the Dan River agreement * * * but was nevertheless sold. * * *

   *     *     *     *     *

From the portions of the record just mentioned the Court could find without difficulty that Goodson coerced Greenberg for purposes of both *Perma Life* and the common law. * * *
Memorandum of Koratron Co., Inc., *supra* at 7–8 (citations to Record omitted).

agreement was involuntary (in a subjective sense) and that there was no other alternative open to him.

Dan River points to the following uncontroverted evidence as showing that Greenberg's decision was not involuntarily made:

(1) Negotiations between Goodson and Greenberg took place over a period of at least a week.

(2) Greenberg testified on deposition that he had received the advice of his counsel, Mr. White, that the chances of Koratron's '432 patent being upheld in litigation was 50–50. (This key fact is disputed by Koratron by the testimony [not yet transcribed] of a Mr. Hochstaedter, a Koratron vice president who was present when Mr. White's advice was allegedly given to Greenberg, Hochstaedter indicated that he does not recall any such advice by Mr. White. It is possible to say, however, that this dispute is not genuine.)

(3) Mr. Joseph Koret, Koret's then chief executive, when consulted about the proposed agreement said, [perhaps accurately] "we are dead if we do and we are dead if we don't," and the decision on whether or not to sign was left entirely up to Greenberg.

(4) Mr. Greenberg met with Mr. Goodson in Washington to determine whether or not in fact the Dan Press was outside the scope of Koratron's '432 patent. Mr. John Barry, Koratron's technical director, was taken to the Washington negotiations to serve as Greenberg's technical adviser. It was at this point that the agreement was signed on behalf of Koratron by Mr. Greenberg.

Here again, Koratron contends that there are conflicting inferences to be drawn from the facts.

(a) Mr. Greenberg is now hostile to Koratron. Therefore, Koratron attempts to put his credibility and bias in issue. However, it can be said that Greenberg's credibility and possible bias are not material or genuine issues unless his deposition testimony is somehow disputed by the nonmoving party. This, however, is not the case.

(b) Koratron cites certain facts from which it urges an inference that Greenberg, at least subjectively, felt coerced into entering the Dan River agreement. There was deposition testimony to the effect that Greenberg was "considerably upset" and "looked grim" at the time he and Goodson were negotiating the agreement. Apparently the inference which is urged to be drawn from these facts is that Greenberg's state of mind was such that he did not know what he was doing and that entering into the agreement was not voluntary at the time. It is intimated that this inference conflicts with the inference drawn from other facts (urged by Dan River) that Greenberg knew what he was doing and made a rational business decision.

We fail to see that a genuine issue of fact as to coercion has been generated. There is, of course, always a measure of coercion in every negotiation in the sense that one or both of the parties are moved as a result of the conditions to take a course of action which they do not wish to take. This is not, however, coercion in law. From what we can see of the evidence, the decision of Koratron to enter into the Dan River agreement was made of its own volition following deliberations which took more than one week. True, the alternatives were narrow in scope and neither of the possible choices were desired by Koratron. But there was nevertheless a careful weighing of the alternatives prior to signing of the contract.

As of this writing the Court is of the opinion that Dan River is entitled to summary judgment on this issue of coercion or economic duress. However, the entry of judgment will be postponed at least until the July pretrial conference, at which time the Dan River documents will be examined once again. It is requested that counsel for Dan River have these documents available at the conference.